AFFIRMED.

THE other judges concur.

---

ED. A. KOEN v. STATE OF NEBRASKA.

[FILED NOVEMBER 16, 1892.]

1. **Libel:** FELONY: MISDEMEANOR. In a prosecution for a false
and malicious libel charged to have been published in the *Kansas
City Sun*, a newspaper published and of general circulation in
Douglas county, Nebraska, *held*, that to charge a felony the
paper must be of general circulation and that the limitation to
one county merely charged a misdemeanor.

2. ————: NEWSPAPERS : GENERAL CIRCULATION. It is not nec-
essary that the newspaper circulate to any considerable extent,

if at all, out of the state, nor that it circulate in every county in the state, but it must extend beyond the county in which it is published and have a general circulation.

ERROR to the district court for Douglas county. Tried below before DAVIS, J.

*Ambrose & Duffie*, and *Lindsley & Dick*, for plaintiff in error.

*George H. Hastings, Attorney General*, and *W. S. Shoemaker, contra.*

MAXWELL, CH. J.

The plaintiff in error was convicted of criminal libel in the district court of Douglas county and sentenced to imprisonment in the penitentiary for three years.

Section 47 of the Criminal Code provides: "If any person shall write, print, or publish any false and malicious libel of, or concerning another, or shall cause or procure any such libel to be written or published, every person so offending shall, upon conviction thereof, be fined in any sum not exceeding $500, or be imprisoned in the county jail not exceeding six months, or both, at the discretion of the court, and, moreover, be liable to the party injured; *Provided,* That if said libel is published in a newspaper having a general circulation, the person so offending shall be punished by imprisonment in the penitentiary not less than one nor more than three years." The charge in the indictment is "that Ed. A. Koen, unlawfully, maliciously, and feloniously, did compose, write, and publish, and cause to be composed, written, and published, in a certain newspaper called *The Kansas City Sun*, published and of general circulation in the county of Douglas, in the state of Nebraska, a certain false, scandalous, malicious, and defamatory libel of and concerning the said Nettie Wilson." It will be observed that the charge is that the libel was published in *The Kan-*

*sas City Sun,* published and of general circulation in the
county of Douglas, in the state of Nebraska. It will be
seen that the statute provides for two classes of cases: First,
for printing, publishing, etc., a libel. This no doubt ap-
plies to ordinary cases. Where there is a conviction under
such circumstances the person found guilty may be impris-
oned in the county jail or fined, or the court may impose
both fine and imprisonment. The statute is based upon
the theory that one who prints and publishes a false and
malicious libel against another—one calculated to injure his
good name and reputation and injure or destroy his in-
fluence—should be branded as a violator of the law at least,
if not as a criminal.

Every person is entitled to protection in the peaceful en-
joyment of his property, good name and fame. The wise
man said, "A good name is rather to be chosen than great
riches, and loving favor rather than silver and gold" (Prov.
22:1); and his words are as applicable to-day as when ut-
tered. A person who willfully and maliciously violates
the law by a publication of the kind named has no just
cause of complaint if the law is vindicated by punishing
him for the offense. The law, however, increases the pen-
alty in proportion to the injury. If the libel is published
in a newspaper of general circulation, then the punishment
is by imprisonment in the penitentiary. The fourth and
fifth definitions given by Webster of the word "general"
as an adjective are as follows: "Common to many, or the
greatest number; widely spread; prevalent; extensive,
though not universal; as, a *general* opinion; a *general* cus-
tom.  *  *  *  5. Having a relation to all; common to
the whole; as, Adam, our *general* sire. Milton." And the
synonyms as follows: "*Common* denotes primarily that in
which many share; and hence, that which is often met
with. *General* is stronger, denoting that which pertains
to a majority of the individuals which compose a genus,
or whole. *Universal,* that which pertains to all without

exception. To be able to read and write is so *common* an attainment in this country that we may pronounce it *general*, though by no means *universal.*" The word is in common use in designating general and local laws. Thus, in *Kelley v. State*, 6 O. St., 269, the constitution required all laws of a general nature to be uniform in their operation throughout the state. An act was passed giving to the court of common pleas jurisdiction of certain criminal cases in some of the counties but not in all, and the act was held to be in conflict with the constitution. There was no dispute as to the meaning of the word "general," but two of the judges were of the opinion that the case was within certain exceptions named.

In *State v. Anderson*, 44 O. St., 247, an act had been passed which applied to the city of Akron alone, and it was held to be a special act, although it purported to be general in its nature, and the same doctrine was declared in *State v. Winch*, 45 O. St., 663, and *State v. Ellet*, 47 Id., 90. In *State v. Hawkins*, 44 O. St., 98, and *State v. Hudson*, Id., 137, the distinction between a general and special statute is very clearly defined. These rules have been recognized by this court. Thus, in *School District v. Clegg*, 8 Neb., 178, it was held that an act authorizing a certain school district to issue bonds was special legislation. So an act declaring a certain ordinance of the city of Lincoln valid was held to be special legislation. (*Hallo v. Helmer*, 12 Neb., 87.) And an act to authorize Falls City precinct to issue bonds was held to be special, and therefore invalid. (*Dundy v. Richardson Co.*, 8 Neb., 508.)

In *McClay v. City of Lincoln*, 32 Neb., 412, it was held that a law framed in general terms, restricted to no locality and operating equally upon all of a group of objects, is not a special law.

In *State v. Berka*, 20 Neb., 379, it is said: "If a law is general and uniform throughout the state, operating alike upon all persons and localities of a class, or who are

brought within the relations and circumstances provided
for, it is not objectionable as wanting uniformity of opera-
tion. (*McAunich v. R. Co.*, 20 Ia., 338; *Haskel v. City of
Burlington*, 30 Id., 232; *R. Co. v. Soper*, 39 Id., 112;
*State v. Graham*, 16 Neb., 76; Cooley, Const. Lim., sec.
390.)"

Judge Sutherland in his work on Statutory Construction,
sec. 116, says: "Laws of a general nature are those which
relate to subjects of that nature, and deal generally with
them. The requirement involves the question, What is
such a subject, and how comprehensively it must be treated
in legislative acts? Laws to which the requirement is ap-
plicable must be so framed as to have a uniform operation
throughout the state."

Judge Dillon in his valuable work on Municipal Cor-
porations, sec. 20, in speaking of general laws creating
municipal corporations, says: "Within a period compara-
tively recent the legislatures of a number of the states, fol-
lowing the example of the English municipal corpora-
tions act of 5 and 6 Will. IV, cap. LXXVI, heretofore
mentioned, have passed *general acts* respecting municipal
corporations. These acts abolish all special charters, or
all with enumerated exceptions, and enact general provis-
ions for the incorporation, regulation, and government of
municipal corporations. The usual scheme is to grade
corporations into classes according to their size, as into
cities of the first class, cities in the second class, and towns
or villages, and to bestow upon each class such powers as
the legislature deems expedient; but the powers and mode
of organization of corporations of each class are uniform.
General incorporation acts, rather than special charters,
would seem clearly to be the best method of creating and
organizing municipal corporations. First—It tends to
prevent favoritism and abuse in procuring extraordinary
grants of special powers. Second—It secures uniformity
of rule and construction. Third—All being created and

endowed alike, real wants are the sooner felt and provided for, and real grievances the sooner redressed."

Many other cases to the same effect might be cited. Section 251 of the Criminal Code provides that "no person shall be punished for an offense which is not made penal by the plain import of the words, upon pretense that he has offended against its spirit."

Now will any one contend that a statute applicable to Douglas county alone is a general law? The authorities, without an exception so far as I have observed after a pretty careful research, hold that such an act is not general but special.

Let us apply these rules to the case at bar.

The statute provides that a person who publishes a false and malicious libel against another in a newspaper of general circulation shall be punished by imprisonment in the penitentiary for not less than one nor more than three years. Here the highest term of imprisonment is six times as great as in an ordinary case, together with the brand of infamy and the loss of civil rights from conviction. Is this severe punishment to be inflicted unless the offense was committed in the manner indicated; that is, in a newspaper of general circulation? If the circulation of a paper in one county is a general circulation, then why is not the same true if it circulates in a village, township, or other subdivision of a county? If the circulation in any of these subdivisions, or the county itself, constitutes a general circulation, then the court will find it impossible to distinguish between the cases where the punishment is imprisonment in the county jail and those of imprisonment in the penitentiary. It is not necessary that the newspaper circulate to any considerable extent, if at all, out of the state, nor that it circulate in every county of the state, but it must extend beyond the county where it is published and have a general circulation.

It may be said that the party who first publishes the

libel, and thus puts it in the power of others, whether inten-
tionally or not, to further injure the plaintiff by a further
publication, should be punished to the full extent of the
law. The answer to this is that persons must beware what
they publish at second-hand, and because one party has
made a false and malicious statement in regard to another
the second publisher must ascertain its truth before he gives
it his indorsement by publishing the same. But to consti-
tute a penitentiary offense the publication must be in a
newspaper in general circulation. By that we understand
a paper not restricted to one county, nor necessarily to the
state itself. In charging the offense, therefore, it should
be done in the language of the statute, without limitation to
a particular county. The pleader, after stating the general
circulation of the paper, may then allege that it was pub-
lished in a certain county, so as to give the courts of that
county jurisdiction.

The indictment fails to state a felony, therefore, and the
judgment must be reversed. The charge alleged being
merely a misdemeanor, the plaintiff in error should not
have been sentenced to the penitentiary; but it is evident
that he was rightfully convicted of a misdemeanor, and the
cause is remanded to the district court of Douglas county
to impose a proper sentence for that offense.

JUDGMENT ACCORDINGLY.

THE other judges concur.