THOMAS REGAN et al., Appellants, v. ELIZABETH HUGUS, County Superintendent, et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Consolidated Districts—Notice—Newspaper of General Circulation. Notice of an election to vote on the question of the formation of a consolidated school district, to be composed of territory from more than one county, need not, when no newspaper is published within the proposed district, be published in a newspaper which has a "general" circulation in *each* of the said different portions of territory which it is proposed to include within the district. The proposed district will be treated as a unit, and *general* circulation therein is all-sufficient.

*Appeal from Montgomery District Court.*—E. B. WOODRUFF, Judge.

MAY 12, 1921.

SUIT to enjoin defendant Elizabeth Hugus, county superintendent of schools, and defendant directors from selling bonds and transacting business of the district. The court denied the relief prayed by plaintiffs, and they appeal.—*Affirmed.*

*Tinley, Mitchell, Pryor, Ross & Mitchell,* for appellants.

*Hysham & Billings,* for appellees.

ARTHUR, J.—On December 10, 1919, an election was held to determine whether there should be established a consolidated independent school district of Climax, out of territory of the counties of Montgomery, Mills, and Page, consisting of 25 con-

tiguous sections of land, 12 sections in Montgomery County, 8 sections in Mills County, and 5 sections in Page County. The election resulted in favor of the proposition to establish the district, by a vote of 67 for and 51 against. Since, an election has been held and officers chosen for the district; also, an issue of bonds has been voted to build a schoolhouse.

The proceedings preliminary and up to the notice for holding the election to establish the district are conceded to be regular. The validity of the election is contested by plaintiffs, appellants here, on the ground that the notice given was not such as prescribed by Chapter 149, Acts of the Thirty-eighth General Assembly; hence was insufficient to give jurisdiction to appellees for further proceeding with business of the district.

Appellants state in their petition that:

"The only question presented by plaintiffs in their petition for the determination of the court was whether or not the notice of the pendency of the election to determine the question as to whether a consolidated independent school district should be established, is sufficient."

The proceedings necessary for the establishment of consolidated independent school districts are set forth in Chapter 149, Acts of the Thirty-eighth General Assembly, and therein it is provided:

"All notices under this act shall be by one publication in a newspaper published within the proposed district or if there be none, then in a newspaper having general circulation within the proposed consolidated district, which publications shall be made not less than five days nor more than fifteen days prior to the hearing or election to which they refer."

No question is raised as to the sufficiency of the notice itself,—that is, as to its form and contents, and that it was published. No issues regarding the preliminary arrangements for the formation of the district, or any of the requisites of Chapter 149, Acts of the Thirty-eighth General Assembly, are involved, other than the notice of the pendency of the election to determine the question as to whether a consolidated independent school district should be established. Neither the election held on December 10, 1919, nor the results thereof are in controversy. Appellants, in their brief, say:

"If the notice was actually sufficient in the way of service upon the inhabitants of the proposed district, and upon those who own land within the proposed district, though not residing therein, then the contention of the appellants is wrong, and the lower court must be affirmed."

It is admitted that the notice was published in the Red Oak Express; that the Red Oak Express is a newspaper published in Red Oak, Montgomery County, Iowa; that it was not printed within the territory comprising any part of the proposed consolidated independent school district; and that there was no newspaper published within the territory of the contemplated district; that the paper publishes the general, current news, as well as advertising matter, and social and political news; that it is one of the official papers in the county, selected by the board of supervisors, in which is published the transaction of the business of the county, the expenditures of money made for the county, etc.

The ultimate question, the point on which the case hinges is: Did the Red Oak Express have a general circulation within the proposed consolidated district of Climax at the time of the publication and election?

There was some oral evidence submitted. The issue, so far as the facts involved are concerned, is practically agreed upon, and the testimony set forth in the abstract only serves to throw some side lights upon the controversy. There were 133 male electors residing in the entire proposed consolidated district. Of these, 86 resided in Montgomery County, 27 in Page County, and 20 in Mills County. At the election, 118 votes were cast, of which 67 were in favor of the establishment of the district, and 51 votes were against consolidation. Of the six plaintiffs in this action, five of them voted at the election. One plaintiff, James Laughlin, did not reside in the district. He was a resident of Fremont County, and did not vote. The Red Oak Express had 2,300 subscribers, of whom 1,697 resided in Montgomery County. Within the proposed district, 32 of said subscribers resided in Montgomery County, 3 in Mills County, and none in Page County. Evidence was offered by plaintiffs to show that the Clarinda Journal, a newspaper published at Clarinda, in Page County, had a general circulation in Page County;

that the Glenwood Opinion, published at Glenwood, in Mills County, had a general circulation in Mills County; and that the Des Moines Register, a newspaper published at Des Moines, in Polk County, and the Nonpareil, a newspaper published at Council Bluffs, in Pottawattamie County, were papers which circulated generally in Montgomery, Mills, and Page Counties. It is admitted that the Red Oak Express had a general circulation in Montgomery County. Plaintiffs' contention is that the Red Oak Express is not such a paper as contemplated by the statute, because it has only three subscribers within that portion of the proposed district lying in Mills County, and no subscribers within that portion of the proposed district lying in Page County; and that, therefore, it is not a paper of general circulation within the proposed district.

The contention of counsel for plaintiffs is, as we understand it, that a newspaper, to meet the provisions of the statute, must have what amounts to a general circulation within the territories of the district lying in each of the three counties: that is, it must have a general circulation among the people residing on the 12 sections of land in Montgomery County, and a general circulation among the people residing on the 8 sections of land in Mills County, and also must have a general circulation among the people residing on the 5 sections of land in Page County. Plaintiffs, to sustain this contention, say that, if the notice had been published in the Glenwood Opinion, of Mills County, and the Clarinda Journal, of Page County, as well as the Red Oak Express, of Montgomery County, such publication would have met the requirements of the statute. The record does not disclose how many subscribers, if any, the Clarinda Journal and the Glenwood Opinion had in the district, or in the portions of the district in each county. Publication in all three of the papers doubtless would have given wider notice. But the answer to such contention is that the statute does not provide for publication of the notice of election in more than one paper.

Plaintiffs admit that the Red Oak Express has a general circulation in Montgomery County, and within the 12 sections of land in Montgomery County lying within the proposed district, but contend that, there being only 3 subscribers within the portion of the district lying in Mills County, and no sub-

scribers in the 5 sections lying in Page County, the notice given does not meet any of the provisions of the statute, which are: "A paper of general circulation within the proposed consolidated district."

The court rendered a written opinion, holding that:

. "Under Chapter 149, Acts of the Thirty-eighth General Assembly, county lines are obliterated, and the proposed district is treated as one unit, whether it is to be carved out of one or more counties; and that the notice required is the same in all cases. The statute, in terms, does not require a general circulation of the newspaper in each and every part of the proposed consolidated district, or in that part of the proposed district lying in each county. * * * The court is of the opinion that the proposed consolidated district is treated by the law as a unit, and that it is not required that the newspaper must circulate in any particular part of the district, or be of uniform circulation over all the proposed district; and therefore the fact that 35 subscribers resided somewhere within said proposed district is sufficient to make such newspaper one of general circulation within the proposed consolidated district."

Counsel cite a number of cases to aid in construction and interpretation of what is meant by "a general circulation within the proposed consolidated district." In many of the cases, courts have not been called upon to make the territorial circulation of a paper the test of whether or not it was a newspaper of general circulation. The papers have been tested according to the matter they contained, and the holdings have been substantially like the definition of a newspaper of general circulation laid down in the Political Code of California, 1903, Section 4459, which reads:

"A newspaper of general circulation is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona-fide subscription list of paying subscribers * * *. A newspaper devoted to the interests, or published for the entertainment of a particular class, profession, trade, calling, race, or denomination, or any number thereof, is not a newspaper of general circulation."

In *Puget Sound Pub. Co. v. Times Printing Co.*, 33 Wash. 551, 558 (74 Pac. 802, 804), the Washington court said:

"It is next claimed that, even if this publication is, in contemplation of law, a newspaper, it is not a newspaper of general circulation in the city of Seattle, and for that reason does not meet the requirements of the city charter. If it were true that the word 'general' is equivalent to 'universal,' there would certainly be much force in this contention. But these words are not synonymous. The word 'general' is derived from 'genus,' and technically relates to a whole genus or kind, or to a whole class or order. But its more usual meaning is: 'Common to many; widely spread; prevalent; extensive, though not universal; as, a general opinion; a general custom.' Webster's International Dictionary."

In *Blair v. Howell*, 68 Iowa 619, 621, this court defined the word "general" in the phrase "general recognition." We said:

"It is claimed, therefore, that his recognition was not general, but, at most, was limited and partial. But everything is limited and partial which is not universal, and 'general' * * * means 'extensive, though not universal.' "

In *Razee v. State*, 73 Neb. 732 (103 N. W. 438), the Nebraska court approved an instruction reading:

"You are instructed that, to be a newspaper of general circulation, such newspaper must circulate beyond the county where it is published. To have a general circulation, it is not necessary that it circulate in every county of the state, but it must extend beyond the county in which it is published, to have a general circulation."

The court further said:

"One of the most vital questions in the whole case was whether the Courier was a newspaper having a general circulation. The provision above quoted was construed in *Koen v. State*, 35 Neb. 676, 17 L. R. A. 821, where, after much discussion of the meaning of the word 'general' and the expression 'general circulation,' it was held that, to charge a felony, the paper must be of general circulation, and that the limitation to one county merely charged a misdemeanor. It was further said: 'It is not necessary that the newspaper circulate to any

considerable extent, if at all, out of the state    *    *    *; but it must extend beyond the county in which it is published.' "

We have adverted to the cases above quoted from, more especially for definitions. If the position taken by the trial court is sound, that, in erecting a consolidated independent school district under Chapter 149, Acts of the Thirty-eighth General Assembly, county lines are obliterated, and the proposed district is treated as a unit, whether it is to be carved out of one or more counties, and that the notice required is the same in all cases, that is decisive of the case. Treating the 25 sections of territory as one unit, the Red Oak Express unquestionably was a newspaper of general circulation therein. In fact, it had quite a large circulation in that territory, for a county paper, proportionate to the population. There being no paper published within the district, the Red Oak Express, published in Montgomery County, where the largest portion of the area of the district is located, and the largest portion of the population is, and where the county superintendent petitioned to resides, was the logical paper to resort to for publication of the notice.

Plaintiffs present in their argument an additional issue in this court, claiming that, even if the notice given by appellees was as prescribed by Chapter 149, Acts of the Thirty-eighth General Assembly, the provisions of said chapter relative thereto are unconstitutional and void, because the statute does not prescribe adequate notice to the inhabitants of the territory which is proposed to be included in the district, nor does it provide notice for those persons who own land in the proposed territory, and who live beyond the boundaries of said proposed district; and for this reason it enables the officers of the district to impose burdens upon the land of said district without due process of law. This constitutional question was not raised in plaintiffs' petition, and was not presented to the lower court. For that reason, we will not entertain it.

We reach the conclusion that the decision of the lower court was correct. The decree and judgment entered below are— *Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.