WILLIAM NELSON MATHEWS V. STATE OF NEBRASKA.

FILED JANUARY 13, 1927.    No. 25513.

1. **Criminal Law:** FLIGHT OF ACCUSED: QUESTION FOR JURY. Where a defendant in a criminal action flees beyond the jurisdiction of the court, or conceals himself, the proof relating thereto is for consideration of the jury, to be given such weight as it deserves, in view of the attending circumstances of the individual case.

2. **Incest:** "LICENTIOUSLY COHABIT." The defendant was convicted under section 9763, Comp. St. 1922, relating to incest, of having licentiously cohabited with his own daughter. The legislative intent in the use of the words "licentiously cohabit" contemplates one or more acts of sexual intercourse of a father with his own daughter.

3. **Criminal Law:** INCEST: SUFFICIENCY OF EVIDENCE. Where a father is charged, under section 9763, Comp. St. 1922, relating to incest, with having had sexual intercourse with his own daughter, the weight of the evidence is for the jury, and the verdict will not be disturbed where, as in the present case, such verdict is supported by sufficient evidence.

ERROR to the district court for Pawnee county: MASON WHEELER, JUDGE. *Affirmed.*

*Robert R. Hastings,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Donald Gallagher, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

William Nelson Mathews, defendant, was informed against in Pawnee county and there charged with having

Mathews v. State.

licentiously cohabited with the prosecutrix, who is his own daughter. In the first count of the information it is charged that the crime was committed on or about January 25, 1925, and in the second count that a like offense was committed on or about February 25, 1925. The jury found defendant guilty, as charged in the first count of the information. A motion for a new trial was overruled. Defendant was thereupon sentenced to serve a term of 20 years in the penitentiary at hard labor. Alleging error, the defendant has brought the record of his conviction to this court to have it reviewed.

This prosecution was brought under the provision of section 9763, Comp. St. 1922, which reads:

"If a father shall licentiously cohabit with his own daughter, the father shall, on conviction, be punished by confinement in the penitentiary for a term not less than twenty years."

When the incestuous crime was alleged to have been committed, the prosecutrix was a high school student of 18 years, and her father was about 49 years of age. Defendant's wife, now deceased, was the mother of defendant's eight children. When the youngest child was born, the mother died in childbirth, January 14, 1925, and this was less than two weeks before defendant, as the state contends, committed the first lascivious act, namely, on or about January 25, 1925. The prosecutrix has five sisters, whose ages range from infancy to 17 years or thereabouts, and two brothers, one of whom, aged 21, is married. Defendant's infant child, so recently born, was adopted by a family in the neighborhood immediately after the death of its mother.

Omitting an avalanche of sordid details, which it is not necessary to repeat here, the evidence of the prosecutrix, in respect of the first count, tends to establish the following material facts: She testified that the offense was committed January 25, 1925, about midnight, when the prosecutrix and a sister, aged three, and defendant slept in the same bed, and that defendant, under a pretext that the prosecutrix was cold, she having just returned from a

basket ball game, moved over to her side of the bed and committed the incestuous act of which complaint is made. In a prosecution for incest, under the facts before us, it is not incumbent on the state to prove resistance. Hence, the question of force will not be discussed here.

The two-story farm house in which it is alleged the crime was committed is a fairly commodious structure and the entire family slept in four beds in two upstairs rooms. The size of the north room is 10 by 20 feet and that of the south room is 14 by 20 feet. Three beds were in the north room and, on the night of January 25, 1925, one of the beds was occupied by defendant's married son and his wife, and a cot bed was occupied alone by defendant's 7-year old daughter, and three daughters aged 5, 9, and 13, respectively, together occupied the remaining bed in the north room. Only one bed was in the south room. Defendant's 13-year old daughter testified that her father and the prosecutrix and her 3-year old sister generally slept together in the bed in the south room, and that after her mother died the three continued to sleep together there. The eldest son was called by the state and he testified that the 3-year old daughter and the prosecutrix and defendant slept together "some of the time."

About three weeks after the death of defendant's wife, the family moved to Table Rock. The eldest son testified that, early in the morning of April 7, 1925, he drove defendant from Table Rock to Seneca, Kansas, and left him there, but none of the family were advised as to their destination, nor that they were about to leave town; that he did not then know anything about the offense charged against his father, but that afterward, in July, 1925, he met his father at his uncle's place in Sherman county, but his father did not return with him to Table Rock, nor did he see him again until long afterward, when he was arrested and brought back for trial to Pawnee county by the sheriff, and he was then in the sheriff's custody.

Defendant testified in his own behalf. He denied that he was guilty. He testified that the prosecutrix was dis-

obedient and that he reprimanded her for fondness for high school basket ball and the like, and that this, and some other trivial circumstances which he submitted to the jury, caused some trouble between them. But the testimony in respect of the alleged troubles, aside from that for which he was arrested, related to trifling incidents, and these were evidently explained by the prosecutrix to the entire satisfaction of the jury. In respect of his departure from Table Rock, defendant testified that he left because some of the Table Rock people were trying to get him to give up his children and this caused him to suspect they were going to take him before an insanity board. But the evidence fails utterly to support this plea and the jury were perfectly justified in finding that it was a mere self-serving pretext. And on his cross-examination defendant fairly admitted that he never at any time had any substantial reason for entertaining a fear that he would be taken before an insanity board. He frankly admitted that he did not want his family to know where he was going, and that he did not care where he went when he left Table Rock; that he went to Seneca, Kansas, as that "was just as good a place as any other," and that he stayed at Seneca a week and sawed wood, and from thence he went to St. Joseph, Missouri, where he stayed several months, and then went to a brother's farm in Sherman county, where he was told that they were "going to end this suit." Subsequently he went to Kansas and afterward to South Dakota, where he remained several weeks, and then returned to Sherman county, where he first learned, he testified, that in July, 1925, a warrant was issued for his arrest. But at no time did he inform the sheriff of Pawnee county of his whereabouts, nor did he voluntarily return to his home. Defendant also testified that he went away to let his son "straighten this up, if that was the fact, to straighten this up, that is why I left Table Rock." Continuing, the defendant testified in respect of the charge that he occupied a bed with the prosecutrix: "Well, I think that she, up until just after

her mother was buried, for two or three nights we were in there taking care of those children. Q. A part of the time you would occcupy the same bed while you were taking care of the children, would you? A. Well, we lay down on the bed, certainly, I don't deny that." Defendant called some of his relatives to impeach the evidence of the prosecutrix in an attempt to show that at the preliminary examination her evidence differed materially from her evidence at the trial. But the jury refused to credit the testimony of the impeaching witnesses.

That defendant fled from the scene of the crime and was gone about six months appears to have been fairly established. And the rule appears to be that, if the evidence in a criminal case shows that the defendant fled beyond the jurisdiction of the court, or concealed himself, such evidence is for the jury, and it may give it such weight as it deserves, in view of the attending circumstances of the individual case. 1 Abbott's Criminal Trial Brief (2d ed.) 458; *Hubbard v. State*, 65 Neb. 805; *Woodruff v. State*, 72 Neb. 815; *Bridges v. State*, 80 Neb. 91; *State v. Hetland*, 141 Ia. 524.

We conclude that, where a father is charged, under section 9763, Comp. St. 1922, relating to incest, with having had sexual intercourse with his own daughter, the weight of the evidence is for the jury, and the verdict will not be disturbed where, as in the present case, such verdict is supported by sufficient evidence.

Counsel argues that "the verdict is contrary to the law." The argument does not appeal to us. The legislative intent, in the use of the words "licentiously cohabit," contemplates one or more acts of sexual intercourse of a father "with his own daughter." To give any other interpretation to section 9763, Comp. St. 1922, under which this action was brought, would leave this state without an incest statute for the punishment of a father who debauched the person of his own daughter by having a single act of sexual intercourse with her. We will not so construe the act. *State v. Lawrence*, 19 Neb. 307, so far as inconsistent with

the views herein expressed is disapproved. In brief, the act, as amended, and as it now reads, contemplates that one, or more than one, violation of the act, on the part of a father, renders him liable to the punishment therein provided, as hereinbefore pointed out.

It will be presumed that the jury considered all of the evidence, and among other this: Defendant's daughter was yet a person of immature years. She was not yet wise to the ways of the despoiler of innocent young womanhood. And to add to her perplexity in this trying situation, her assailant was an unnatural father, to whom, in her bewilderment, this motherless girl, so recently orphaned, may have entertained the thought that, even under the unspeakable facts herein disclosed, she owed implicit obedience. 31 C. J. 377, sec. 13, and notes. The jury saw and heard and observed the demeanor of the presecutrix, and it took all of that into account which, under the practice and decisions in this state, it was not only its privilege but it was its duty to consider. That the jury, and not the reviewing court, is the trier of disputed questions of fact is firmly established in this jurisdiction. Defendant tendered five instructions, all of which were refused. The court gave seven instructions, and to each of them defendant filed objections. But, neither in respect of the instructions given by the court, nor in respect of the refusal to give those tendered in defendant's behalf, is there any substantial, reviewable, or reversible error of the court pointed out in defendant's brief. The jury was fairly instructed, under the law, in respect of every controverted fact which was submitted for its consideration. *Carleton v. State,* 43 Neb. 373.

The defendant had a fair and impartial trial. Reversible error has not been pointed out. The judgment must be, and it hereby is,

AFFIRMED.

MORRISSEY, C. J., dissenting.

There are matters disclosed by the record, but not discussed in the opinion, which constrain me to the view that

the guilt of defendant has not been established according to law. I, therefore, dissent from the majority opinion.