ANTON SVEHLA, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

96 N. W. 2d 649

Filed May 22, 1959. No. 34561.

554

*James F. Brogan,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *John E. Wenstrand,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff in error, Anton Svehla, hereinafter referred to as defendant, was charged with the crime of incest. He was convicted and sentenced to be confined in the State Penitentiary. He brings the cause here by petition in error to have the conviction and sentence vacated.

The original information was received by the sheriff of Madison County on April 8, 1958, served on the defendant April 9, 1958, and filed with the clerk of the district court on April 9, 1958. On September 5, 1958,

a hearing was had before the trial court. The county attorney requested leave of court to endorse upon the information the names of certain witnesses. At the time the original information was filed, it contained no endorsement of names of witnesses to be called by the State. The defendant predicates error on the part of the trial court in permitting the county attorney to endorse the names of all of the witnesses for the State on the information on September 5, 1958.

The defendant contends that the names of all of the witnesses for the State known to the State at the time of the filing of an information must be endorsed thereon.

Section 29-1602, R. R. S. 1943, provides: "All informations shall be filed in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant. He shall subscribe his name thereto and endorse thereon the names of the witnesses known to him at the time of filing the same; and at such time thereafter, as the court or a judge thereof in vacation, in its or his discretion, may prescribe, he shall endorse thereon the names of such other witnesses as shall then be known to him."

"The names of witnesses upon which the state relies to prove the charge against one accused of crime should be indorsed upon the information at as early a day as practicable after the discovery of such witnesses, and in all cases before the cause is called for trial, and reasonable time after such indorsement should be allowed to enable the defendant to prepare for trial." Wilson v. State, 87 Neb. 638, 128 N. W. 38.

In Phillips v. State, 157 Neb. 419, 59 N. W. 2d 598, 58 A. L. R. 2d 1141, this court held: "A trial court may, in the exercise of its discretion, permit the names of additional witnesses to be endorsed upon an information before or after the trial has begun when there is no showing of prejudice to the rights of the defendant." See, also, McCartney v. State, 129 Neb. 716, 262 N. W.

679; Barnts v. State, 116 Neb. 363, 217 N. W. 591; Brunke v. State, 105 Neb. 343, 180 N. W. 560; People v. La Panne, 255 Mich. 38, 237 N. W. 38; People v. McCrea, 303 Mich. 213, 6 N. W. 2d 489.

The witnesses whose names were endorsed on the information on September 5, 1958, were the six children of the defendant, his mother, the sheriff of Madison County, and the assistant chief of police of the city of Norfolk. This case was set for trial at 9 a.m., on September 22, 1958. The defendant and his counsel knew and were aware for nearly 2½ weeks before trial who the witnesses for the State would be.

The defendant filed an application for a continuance, which was overruled.

"An application for a continuance is addressed to the sound discretion of the trial court and its ruling thereon will not be disturbed unless it appears that the rights of the defendant were prejudiced thereby." Phillips v. State, *supra*.

We conclude that under the circumstances there was reasonable time to allow the defendant and his counsel to investigate the witnesses and prepare for trial. We find no prejudicial error as contended for by the defendant.

The record discloses that the defendant was arrested on March 3, 1958. Prior to his arrest, he lived 1 mile north and 3½ miles east of Meadow Grove on a rented place. He had lived there about 5½ years. He was engaged in the business of buying and selling junk.

The defendant testified that his wife had died in Grand Island about 10 years ago. They had been married 12 years when she passed away. His family consisted of six children, Anton, Jr., called Tony, 18; Edward, nearly 16; Frankie, 14; Mildred, 16; Vivian, 19; and Johnnie, 12 years of age.

There appears in evidence a plat showing the rooms in the house. There are also photographs showing the

interior of the house and the location of the rooms therein.

Vivian testified that she was 19 years of age and the daughter of the defendant. She further testified that there were two beds in the dining room; that she slept in one bed and her brother Johnnie in the other; that her bed was in the northwest corner and Johnnie's bed in the southwest corner of the room; that Mildred slept in a room that leads to the front room, which would be the room in the northwest corner of the house, next to the closet; that the defendant slept in the room north of the dining room, a short distance from where she slept; and that the other three boys slept in the room immediately north of the kitchen. She further testified that she knew what was meant by sexual intercourse and had had experience in such act, but denied that she ever had sexual intercourse with her father. She further testified that she quit going to school after attending high school for 2 weeks; that she had slept with Mildred; and that after the death of her mother she more or less took over the household duties and took care of the younger children.

Mildred testified that she was living at Geneva; and that she had run away from Assumption Academy. She further testified that Vivian quit sleeping with her and slept in her father's bedroom with him; that this would usually take place twice a week; that sometimes her father would go to dances on Wednesday and Saturday nights; that when he came home he would awaken Vivian and she would usually go into his room; that sometimes Vivian would stay in her father's room all night and other times just for a little while; and that sometimes she heard unusual sounds coming from her father's bedroom while Vivian was there, like Vivian was crying. She further testified that she knew what sexual intercourse was and had experienced it before she went to Geneva. She further testified that on one occasion she was sent out of the house, and as she was

coming back into the house she stopped on the porch, looked through a window, and could see Vivian and her father engaged in sexual intercourse. She was alone on this occasion. She believed this took place in July or August 1957.

Edward testified that he was living at Boys Town. He had lived at home with his brothers and sisters. After his father would leave in the evening, he would get up and leave the bedroom by jumping through a window, and go in to town. He did this because the door to the bedroom he slept in was padlocked. Sometimes he would be awake when his father arrived home, and he could hear Vivian and his father talking. This usually happened on Wednesday and Saturday nights. Sometimes he heard them talking in the kitchen and other times in his father's bedroom. He further testified that he understood what caused the birth of babies; that on one occasion he was standing on the porch looking through a window with Tony, Mildred, Frankie, and Johnnie, and he saw his father and Vivian on Vivian's bed in the dining room; and that he could only see a part of their legs and their feet, not quite past the knees. This occurred less than half a year before his father was placed in jail.

Johnnie testified that he was 12 years old and had been living at Boys Town for about 3½ months; that the nights Vivian did not sleep in her bed, she would sleep with his father; that when his father came home after being out, his father would awaken Vivian and she would go with him into his room and they would close the door; that he could hear the bed squeaking; that he saw his father on top of Vivian in the bed; and that this was early in the morning and he saw them through the keyhole. On cross-examination he testified that he looked through the keyhole of the door about once a month, at about 1 o'clock in the morning, and that he could see into the room.

The defendant testified that he never had sexual re-

lations of any kind with Vivian, nor did he fondle her or attempt to have intercourse with her; that he had a normal affection for her; that she had never been in bed with him; that he had on occasions gone to dances on Wednesday nights, but Saturday night was his night out, and he usually went to Kings at Norfolk; that he did lock the boys in their bedroom on the nights he went out because Tony, Edward, and Frankie were involved in stealing from the neighbors; and that Vivian kept her clothes in a closet off his bedroom and would go into his bedroom to get her clothes.

Ervin Warnecke, assistant chief of police of Norfolk, testified that on the first occasion he went to the defendant's home he went with the sheriff to search the home; that he examined the defendant's bedroom; that he picked up an encyclopedia of sex, four magazines that would be considered "racy", and an empty contraceptive box under the mattress on the defendant's bed. On cross-examination he testified that magazines of this type could be purchased at newsstands in Norfolk.

The defendant assigns as error that the verdict is contrary to the evidence, the instructions, and the law.

The defendant argues that in the prosecution for incest, the State must establish, as a necessary element of the offense, that there was actual penetration of the female involved, by the male; that in this case there is no evidence of the actual penetration of the female, Vivian Svehla, by the defendant; that the defendant requested the trial court to instruct the jury that penetration must be established in order to prove the crime of incest; and that the court refused to so instruct the jury.

The defendant was charged under section 28-906, R. R. S. 1943, which provides in part: "If a father shall licentiously cohabit with his own daughter, the father shall upon conviction be punished by confinement in the penitentiary * * *."

The defendant cites 2 Wharton's Criminal Law and

Procedure, § 725, p. 536, which states, in part, as follows: "By the general rule, the offense of incest in so far as it relates to intercourse requires a penetration of the female by the male." The following cases are cited in support thereof: State v. McCall, 245 Iowa 991, 63 N. W. 2d 874; Signs v. State, 35 Okl. Cr. 340, 250 P. 938. See, also, 27 Am. Jur., Incest, § 2, p. 288.

In State v. McCall, *supra*, the defendant contended the court erred in overruling his motion for directed verdict, based upon the insufficiency of the evidence. The court said: "One complaint is there was no proof of penetration of the female organ, which is essential to conviction of incest. State v. Judd, 132 Iowa 296, 301, 302, 109 N. W. 892, 11 Ann. Cas. 91; 42 C. J. S., Incest, section 5; 27 Am. Jur., Incest, section 2. This contention is not well founded. Letha was a bright girl, age fifteen years. * * * She testified she understood the meaning of the term sexual intercourse, and that defendant had sexual intercourse with her * * *. The meaning of this term is clear and is common knowledge. A dictionary definition is: sexual or carnal connection; coition. The term itself necessarily includes penetration. State v. Frazier, 54 Kan. 719, 39 P. 819; Hunley v. Commonwealth, 217 Ky. 675, 290 S. W. 511, 514; Shepherd v. State, 111 Tex. Cr. 4, 10 S. W. 2d 730; State v. Haston, 64 Ariz. 72, 166 P. 2d 141, 143, 144; State v. Diamond, 50 Nev. 433, 264 P. 697. The testimony above-noted, without more, was sufficient to make the question of penetration one of fact for the jury."

In Mathews v. State, 115 Neb. 158, 211 N. W. 942, referring to what was then section 9763, Comp. St. 1922, relating to incest, the defendant was charged with having licentiously cohabited with his own daughter. The court said: "The legislative intent, in the use of the words 'licentiously cohabit,' contemplates one or more acts of sexual intercourse of a father 'with his own daughter.'" This rule applies to what is now section 28-906, R. R. S. 1943.

It is true Vivian denied that she ever had intercourse with her father. We refer to Mildred's testimony heretofore set out, that she knew what sexual intercourse was. On cross-examination she was asked: "Now you say you saw this act of intercourse between your father and Vivian during the summer." Her answer was "Yes." The record discloses that the defendant did not inquire into Mildred's knowledge of penetration.

With reference to the defendant's requested instruction that the jury be instructed that penetration of the female was one of the essential elements of the crime of incest, the court did instruct the jury that the term "licentiously cohabit" contemplates one or more acts of sexual intercourse between the father and his own daughter.

Considering the language in the above cases, if the jury found that the defendant committed one or more acts of sexual intercourse with his daughter Vivian, it would follow that penetration existed. We conclude that the defendant's contention cannot be sustained.

The defendant contends that in a prosecution for incest, if the State elects to base the prosecution on an offense alleged to have been committed on a particular date, it is bound by such election, and that evidence of prior similar acts can only be introduced for the purpose of showing the disposition or inclination of the defendant to commit the crime on the date charged.

The defendant asserts that the original information filed in this case charged Anton Svehla with incest "for the past several years, * * * and the present year of 1958." The State elected to stand on the date set forth in the amended information which the court granted the State permission to file. The amended information charged the defendant with the commission of the crime of incest "on or about the 23rd day of February, 1958." The defendant asserts that the State introduced no evidence whatever to establish the crime

of incest on the defendant's part on February 23, 1958, or anywhere near that date.

It is true the State did not establish that the crime of incest was committed on February 23, 1958.

In Yeoman v. State, 21 Neb. 171, 31 N. W. 669, it is said: "On the trial of the case the court charged the jury that it was not necessary that the offense be proven to have been committed on the date alleged in the indictment, but that it would be sufficient if proven to have been committed within three years prior to the finding of the indictment. The instruction was Held, To be correct." This case involved the crime of fornication. The same rule applies to the filing of an information.

Instruction No. 6 given by the trial court states in part: "Insofar as the time of the alleged offense is concerned, it is sufficient if you find that the evidence establishes beyond a reasonable doubt that such offense was committed on some day or time, but in any event it must have been committed, if such you find, within three years prior to the date charged in the information; * * *." While the instruction is technically erroneous, it does not constitute prejudicial error, and under the evidence the jury could not have been misled.

There is no prejudicial error in the instruction. The time of the commission of the offense, as fixed by Mildred Svehla, was in July or August 1957, which was well within the proper period of time as stated in Yeoman v. State, *supra.*

The defendant asserts that the jury had to disregard the court's instruction No. 5 to find the defendant guilty, and in that regard the verdict is contrary to the evidence and to the instructions.

Instruction No. 5 set forth the essential elements of the offense. In part (c) thereof the court stated: "That said defendant did so on or about the 23rd day of February, 1958." We believe that the part of instruction No. 6 set out above explains the words "on or

about" given in instruction No. 5, and is a proper instruction under the law; and that instructions Nos. 5 and 6 are not in conflict. The State was not required to establish a licentious act on February 23, 1958, but only such an act within 3 years from the date of filing the amended information. We find no prejudicial error as contended for by the defendant.

The defendant contends that upon filing of a plea in abatement in a criminal case, issues must be joined and pleadings must be filed by the State in response to the plea in abatement.

Section 29-1809, R. R. S. 1943, provides: "A plea in abatement may be made when there is a defect in the record which is shown by facts extrinsic thereto."

Section 29-1814, R. R. S. 1943, provides: "To any plea in abatement the county attorney may demur if it is not sufficient in substance, or he may reply setting forth any facts which may show that there is no defect in the record as charged in the plea."

The defendant filed his plea in abatement on September 19, 1958, and proceeded to try it before the court on the same day. The defendant made no objection that the State had failed to file a demurrer or reply, and brought the matter up for the first time in his motion for new trial. Under the circumstances presented by the record, we conclude that the defendant has failed to show prejudicial error as contended for by him.

The defendant contends that an information which is defective on its face must be quashed upon proper motion made, and that likewise, an amended information is subject to a motion to quash when the court has given leave only to amend by interlineation.

The court overruled the defendant's motion to quash the amended information. The original information was filed April 9, 1958. On September 5, 1958, the defendant filed his motion to quash the information and also filed a plea in bar. On September 8, 1958, the defendant

filed a motion to compel the State to elect on which count it would proceed, and to specify the date on which the alleged crime was committed. On September 9, 1958, the defendant was allowed to withdraw his plea of not guilty to the original information in order to present his motion to quash the information, his plea in bar, and to present his motion to compel the State to elect and to specify the statute under which the State charged the defendant with the crime. The court sustained the motion requiring the State to specify the statute under which the defendant was charged with the crime.

The defendant refers to the judge's notes which state, in part: "September 9, 1958. * * * County Attorney granted leave to amend the information instanter by interlineation to more definitely allege the time of the offense charged, and to specify the particular statute under which defendant is charged, as Section 28-906 R. R. S."

The journal entry states in part: "4. Upon application by the County Attorney orally made in open court the State of Nebraska is granted leave to file an amended information for the purpose of more definitely alleging the time of the offense charged and for the further purpose of specifying the particular statute under which the Defendant has been charged."

The judge adequately explained in the record the conflict between the notes and the journal entry above set forth.

The record made in open court in the presence of the parties reveals the following: "THE COURT: The State is granted leave to amend the information instanter by interlination (sic) or in the alternative, to file an amended information."

The State filed an amended information more definitely setting forth the date of the offense charged.

The defendant next argues that the original information was dated April 8, 1958; that the return shows the

sheriff received it on the same date; and that the record shows the information was filed April 9, 1958, and served on April 9, 1958.

Section 29-1802, R. R. S. 1943, provides in part: "Within twenty-four hours after the filing of an indictment for felony, * * * the clerk shall make and deliver to the sheriff, the defendant or his counsel a copy of the indictment, and the sheriff on receiving such copy shall serve the same upon the defendant."

Section 29-1604, R. R. S. 1943, provides in part: "The provisions of the criminal code in relation to indictments, and all other provisions of law, applying to prosecutions upon indictments to writs and process therein, and the issuing and service thereof, * * * shall in the same manner and to the same extent, as nearly as may be, apply to informations, and all prosecutions and proceedings thereon."

In Losieau v. State, 157 Neb. 115, 58 N. W. 2d 824, this court said: "The district court in its discretion may before trial permit the county attorney to amend a criminal information, provided the amendment does not change the nature or identity of the offense charged, and the information as amended does not charge a crime other than the one on which the accused has his preliminary examination." See, also, Razee v. State, 73 Neb. 732, 103 N. W. 438; Wilson v. State, 120 Neb. 468, 233 N. W. 461; Hoctor v. State, 141 Neb. 329, 3 N. W. 2d 558.

In addition, the defendant was arraigned on the amended information, stood mute, and a plea of not guilty was entered on his behalf. We fail to find that the defendant was in any manner prejudiced by the circumstances disclosed by the record as above set forth.

The defendant contends that the reception into evidence of the empty contraceptive container, a book on sex, and four magazines heretofore referred to, constituted prejudicial error for the reason that the evidence failed to establish that these items were the property

of the defendant, or had any connection with the case, therefore the only purpose of introducing this evidence would be to inflame and arouse the prejudice and passion of the jury. The defendant objected to the foundation, to the competency, and to the relevancy of these exhibits when they were introduced.

In Aller v. State, 114 Neb. 59, 205 N. W. 939, this court said: "The receiving, over objection, of evidence of an immaterial fact constitutes no ground for a reversal, unless it is shown that such evidence is prejudicial to the complaining party." See, also, Carrall v. State, 53 Neb. 431, 73 N. W. 939.

In 24 C. J. S., Criminal Law, § 1913, p. 927, it is said: "While prejudicial error relating to evidence is a ground for reversal, rulings as to evidence, although technically erroneous, will not constitute a ground for reversal of a conviction where no prejudice results to accused, as where the verdict could not have been affected; nor are erroneous rulings prejudicial where the verdict could not have been affected, or where evidence of the guilt of the accused left no room for reasonable doubt, and the errors were trivial, or did not weaken the properly admitted testimony nor affect the legality of the trial; nor are errors relating to evidence prejudicial where they are rendered harmless by subsequent events, or where accused could have remedied the error."

In Cook v. State, 111 Neb. 590, 197 N. W. 421, the court said: "In a criminal prosecution, mere errors in rulings on evidence or in giving or refusing instructions, if without prejudice to accused, are not grounds for reversing a conviction."

The record discloses that the magazines received in evidence could be bought at any newsstand in Norfolk. It appears that these exhibits might be immaterial or irrelevant to the crime charged, however, in the light of all of the evidence and the authorities above cited, we believe that the reception of these items into evi-

dence did not constitute prejudicial error.

The defendant contends he was denied his right to a speedy trial in violation of Article I, section 3, of the Constitution of Nebraska, and Article XIV, section 1, of the Constitution of the United States.

The record discloses that the defendant was represented by counsel 3 days after he had been arraigned before the magistrate. He was represented by his present counsel, at least since May 2, 1958, when he was arraigned on the original information in the district court, at which time the defendant was advised of his constitutional rights, and he advised the court that he understood his rights and the nature of the charge against him, and entered his plea of not guilty.

The question of whether or not the defendant has had a speedy trial is to be determined by what is fair and reasonable under the facts and circumstances in each particular case. See Maher v. State, 144 Neb. 463, 13 N. W. 2d 641.

In Shepherd v. United States, 163 F. 2d 974, it is said: "The constitutional guarantee of a 'speedy trial' is intended to prevent the oppression of a citizen by delaying criminal prosecution for an indefinite time and to prevent delays in administration of justice by requiring judicial tribunals to proceed with reasonable dispatch in trial of criminal prosecutions. * * * A 'speedy trial', generally, is one conducted according to prevailing rules and proceedings of law, free from arbitrary, vexatious and oppressive delays. * * * The right of accused to discharge for failure to receive a speedy trial is a personal right which may be waived, and it ordinarily is waived if accused fails to assert his right by making a demand for trial, by resisting a continuance, by going to trial without objection that time limit had passed, or by failing to make some effort to secure a speedy trial. * * * The right of a speedy trial is relative and depends upon circumstances and is not denied where delay is satisfactorily explained by government and defendant

was brought to trial as soon as was reasonably possible."

We fail to find in the record any protest or objection made on the part of the defendant until he filed his plea in abatement on September 19, 1958. This plea in abatement refers to a "speedy trial." We fail to find in the record any request by the defendant for an immediate trial.

Section 29-1202, R. R. S. 1943, provides: "If any person indicted for any offense and committed to prison shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense, which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner." The same rule applies to a person charged with a crime in an information.

In Maher v. State, *supra,* this court said: "The legislature of our state has interpreted the Constitution on the matter of a speedy trial by fixing what, in certain cases and under certain conditions, is to be regarded as a maximum time within which a defendant must be tried. The interpretation of this constitutional provision is for the court, but since the time fixed by the legislature is not unreasonable, we adopt it as our own. * * * But the legislature has not undertaken to fix any minimum time in such matters. What is a fair and reasonable time in each particular case is always in the discretion of the court. No hard and fast rule can be applied in all cases."

We conclude that the defendant's contention cannot be sustained.

The defendant makes some point that he was denied counsel when he was arraigned before the justice of the peace, waived his preliminary hearing, and was ordered to appear before the district court for Madison County to answer to the complaint filed against him. These proceedings occurred on April 1, 1958.

"In the absence of statute, a person accused of an offense is not entitled as of right to representation by counsel upon his preliminary examination." Roberts v. State, 145 Neb. 658, 17 N. W. 2d 666.

Under the circumstances as disclosed by the record and the authorities above cited, we conclude that the defendant's contention cannot be sustained.

The defendant contends that the county attorney was guilty of misconduct for the reason that he attempted to use evidence which he knew, or should have known, was inadmissible, and the attempted use thereof was calculated only to mislead or prejudice the jury.

In this connection, the defendant asserts that the county attorney called Vivian Svehla to testify as a witness for the State, and she testified that she had not had any sexual relations with her father, the defendant. The defendant asserts the county attorney was not surprised by this testimony, that he knew, or should have known, that he could not impeach his own witness unless he was surprised by the testimony given by her. While Vivian Svehla denied ever having sexual intercourse with her father, the county attorney produced a document signed by Vivian, to which the defendant objected as being an attempt to impeach the witness. The defendant was given leave to cross-examine this witness as to the foundation. Her testimony on cross-examination was to the effect that she had repudiated whatever was contained in the exhibit or document relating to sexual intercourse with her father made by her and given to the county attorney. The court refused to receive the document or exhibit in evidence.

In Moore v. State, 147 Neb. 390, 23 N. W. 2d 552, the court said: "The applicable rule is that it is always permissible for a party to ask his own witness whether he had made prior statements inconsistent with his testimony and such an inquiry is not objectionable, although the incidental effect of it is to impeach the witness. Such an examination is a proper one for the purpose of

showing that the testimony of the witness operated as a surprise, or to test his recollection, refresh his memory, induce him to change his testimony, draw out an explanation of his apparent inconsistency, or to show the circumstances which induced the party to call him, and that such party had been placed at a disadvantage by unexpected evidence. 70 C. J., Witnesses, § 1225, p. 1025. Penhansky v. Drake Realty Construction Co., 109 Neb. 120, 190 N. W. 265."

We conclude that there was no prejudicial error as contended for by the defendant.

Other assignments of error are without merit and need not be discussed.

The time served by the defendant since his arrest is to be applied to the sentence imposed upon him by the trial court.

There being no prejudicial error in the record, the judgment of the district court is affirmed.

AFFIRMED.