35 U.S. 231 (____)
10 Pet. 231
*THE UNITED STATES, APPELLANTS,
v.
STEPHEN D. FERNANDEZ AND OTHERS.
Supreme Court of United States.

The case was presented to the court by Mr. Butler, attorney-general, for the United States; and by Mr. White, for the appellees.
Mr. Justice BALDWIN delivered the opinion of the court.
This is an appeal from the decree of the judge of the superior court for the eastern district of Florida, confirming the claim of the appellees to sixteen thousand acres of land, pursuant to the acts of congress for the adjustment of land claims in Florida.
In the court below, the petition was in the form prescribed by law; presenting a proper case for the exercise of the jurisdiction of the court.
The claim of the petitioner was founded on his application to the governor of East Florida, for a grant of sixteen thousand acres of land, in consideration, of his services to the Spanish government; which was granted to him at the place specified, with directions to make the surveys there, or at any other that may be vacant. This grant was made, the 16th of November, 1817; and surveyed in May and June, 1818, in four different tracts.
Various objections were made in the court below to the *confirmation [*304 of the title, which have not been pressed here, as they have been overruled in the previous decisions of this court.
The only one which has not been distinctly considered, is to that part of the land surveyed which lies within the Indian boundary; where, it is contended, the governor had no power to grant lands. In the case of Arredondo, the grant was of lands within the Indian boundary; but which, by a proceeding in the nature of an inquest of office at the common law, were declared to be annexed to the royal domain, by their abandonment by the Indians. 6 Peters, 741. In the case of Mitchell, the original grant was made by the Indians themselves, of lands which had not reverted or been ceded to the *232 crown; so that the broad question of the validity of an original grant, by the governor, of lands within the Indian boundary, which had not by any official act been decreed to form a part of the royal domain, has never come directly before us. It is now distinctly presented for our adjudication, and ought to be decided.
This subject was so fully and ably considered in M'Intosh v. Johnson, that we have only to refer to the language of the court to show that every European government claimed and exercised the right of granting lands, while in the occupation of the Indians. 8 Wheat. 574, 579, 5 Cond. Rep. 515. The proclamation of 1763, which was the law of Florida while that province was under the dominion of Great Britain, gave express authority to the governor of that province to grant bounty lands to the officers and soldiers entitled under that proclamation. No other restrictions were imposed on them, than that they should not grant any lands beyond the bounds of their respective governments, as described in their commissions. The general prohibition to grant lands reserved to the Indians, was confined to the governors of the other colonies or plantations in America. 6 Laws United States, 446.
The government of East Florida was declared to be bounded, west by the Appalachicola and the Gulf of Mexico, north by a line drawn from the junction of the Chattahoochie and Flint rivers to the source of the St. Mary's river, and by the course of that river to the Atlantic ocean, and to the east and south by the Atlantic ocean and the Gulf of Mexico, including all islands within six leagues of the sea coast. 6 Laws, 444. Under the British government then, the governor of East Florida had express power to make grants of lands in the possession of the Indians. Spain never made any formal designation of boundary between the two provinces; but practically, West Florida *305] *extended east of the Appalachicola to the St. Mark's: this, however, left the whole country, to the east of the St. Marks, within the eastern province, including the lands in question. 9 Peters, 738.
It does not appear that either government had ever established any definite boundary between them, and the Indians in East Florida: the evidence to the contrary is very strong, as appeared in the case of Mitchell, 9 Peters, 745; and as it appears in this record, p. 17, 19. Nor does there appear to have been any restriction on the powers of the governor to make grants of land under Spain, other than those imposed on the governors under Great Britain: both made grants without regard to the land being in the possession of the Indians: they were valid to pass the right of the crown, subject to their right of occupancy: when that ceased, either by grant to individuals with the consent of the local governors, by cession to the crown, or the abandonment by the Indians, the title of the grantee became complete.
On the general question, therefore, of the validity of grants of lands in East Florida in the possession of the Indians, we are of opinion that they were good to pass the right of the crown: the grant of the governor severed them from the royal domain, so that they became *233 private property, which was not ceded to the United States by the treaty with Spain.
We, therefore, adjudge the title of the appellee to be valid, and affirm the decree of the court below.
This cause came on to be heard on the transcript of the record from the superior court for the district of East Florida, and was argued by counsel; on consideration whereof, it is ordered, adjudged, and decreed by this court, that the decree of the said superior court for the district of East Florida in this cause be, and the same is hereby affirmed.