Storrs Agricultural School *v.* Whitney.

THE TRUSTEES OF THE STORRS AGRICULTURAL SCHOOL
*vs.* MINERVA B. WHITNEY AND OTHERS.

Hartford District, Oct T., 1886. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and GRANGER, JS.

*W* conveyed to a charitable corporation a quantity of land in this state,
to be used for the charitable purpose for which the corporation was
organized, with a proviso that if it should abandon such use it should
pay the market value of the property as it received it to the selectmen
of the town of *M*, to constitute a fund of which the selectmen and
their successors in office should be trustees, the interest of which
should be applied by them to the aid of indigent young men fitting
themselves for the ministry. The corporation accepted the property
and used it for the purpose intended for about ten years, when it aban-
doned the use of it, but did not pay the value over to the selectmen of
*M*. Soon after the corporation and the selectmen quit-claimed to the
widow of the original donor all their interest in the land. Held that
the land remained charged with the incumbrance in favor of the se-
lectmen of the town.

This second charity was not void as contravening the rule against perpe-
tuities by reason of the uncertainty when it would vest, because it was
preceded by a charity, and one charity thus made contingently to suc-
ceed another does not fall within the reason of the rule against perpe-
tuities.

The charity being a valid one, the declining of the selectmen to accept
the trust could not affect it.

The gift " to aid indigent young men in fitting themselves for the evan-
gelical ministry," held not to be void for uncertainty.

[Argued October 6th, 1886—decided January 26th, 1887.]

SUIT for the removal of a cloud from a title; brought to
the Superior Court in Tolland County. Facts found and
case reserved for advice. The case is fully stated in the
opinion.

*E. H. Hyde, Jr.*, presented the case in behalf of the plain-
tiffs. No argument was made on the other side.

PARDEE, J. The Connecticut Soldiers' Orphan Home was
incorporated in 1864 for the charitable purpose of providing

a home, support and education for orphans or destitute children of soldiers and other citizens of this state. In 1866 Edwin Whitney conveyed to the corporators thereof and their successors, two pieces of land in the town of Mansfield, to be by them used for the purposes specified in their act of incorporation, with this proviso, *viz.* :—"Always provided, that if at any time said grantees or their successors in office shall abandon the use of said premises for the purpose intended and specified in their said act of incorporation, then said grantees and their successors shall pay the market value of said property derived from the grantor to the selectmen of said town of Mansfield, and the same shall constitute a fund of which said selectmen and their successors in office shall be trustees, the interest of which shall be applied by said selectmen to aid indigent young men of said town of Mansfield in fitting themselves for the evangelical ministry. But no more than one hundred dollars shall be furnished to any one person during his whole course of study. And provided further, that in case the interest of said fund shall not be absorbed by education to indigent young men of said Mansfield as aforesaid, then the surplus shall be applied by said selectmen in aid of other indigent young men in this state fitting for the evangelical ministry." The corporators accepted the gift and administered the trust to the specified use until 1875, when they ceased to do so. No part of the value of the property donated by Mr. Whitney has been paid by them or any one else to the selectmen of the town of Mansfield, as required by the proviso in Mr. Whitney's deed. The town of Mansfield subsequently directed its selectmen to decline the trust and quit-claim all of the interest of the town in the property to the widow of Mr. Whitney, the donor. They did so in 1876. In 1878 the Connecticut Soldiers' Orphan Home quit-claimed its interest in the property to Mrs. Whitney, and she subsequently conveyed it to Augustus Storrs. In 1881 the legislature established the Storrs Agricultural School, and appointed trustees for the management thereof, with power to take donations of land or other property in behalf of the state for the use

of the school. The plaintiffs are such trustees. In 1881 Augustus Storrs conveyed the premises to them as such trustees for the establishment of said school. They have instituted this proceeding for the purpose of obtaining a judicial determination of the question whether the state has an unincumbered title to the property. The case is reserved for the advice of this court.

Mr. Whitney by deed conveyed the premises in question to the Connecticut Soldiers' Orphan Home, to it and its successors, upon a charitable use, "in consideration of the benevolent ends embraced in the act of incorporation and from a desire to aid in carrying out the same." Desiring to make it certain that either this identical property, or the value thereof in money, should perpetually serve a charitable use, and not being certain that the first named use would be long continued, he inserted the proviso in his deed. The legal effect of his conveyance, taken as a whole, is the gift of property in fee to one corporation for a charitable use; the right to perpetual retention and use if it chooses to exercise it, with a conditional limitation annexed upon its determination not to use. Upon such determination the donor provided for the continued use of his gift for charity by requiring the first board of trustees to pay the value of it in money to a second for a different but equally charitable use. He foresaw and provided for the probability that the Orphans' Home corporation would expend money in the erection of additional buildings upon the land donated by him; upon abandonment he only required it to pay to the trustees for the second charitable use such sum of money as would represent his gift. He parted with his entire interest in and right or title to the land, reserving nothing—no right of re-entry for forfeiture either to himself or his heirs or assigns. Everything went from him by deed irrevocable; but in parting with the land he put an ineffaceable perpetual charitable stamp upon it. This stamp went upon the record and therefore became known to all men. Any person thereafter taking a conveyance of that land before a sum of money equal to the market value of that

which Mr. Whitney gave had been paid to the trustees for the second charitable. use, did so with knowledge that there was in legal effect an incumbrance thereon, undischarged, equal to that sum ; that upon the happening of a possible event the trustees for a specified charity would come into possession of the right and power to compel the holder of the title to the land either to yield it up to them or pay the value of the original gift.

The formal rejection of the gift by the town of Mansfield is of no consequence ; there is no gift to the town, and therefore no opportunity for rejection.    If the persons who should at any time hold office as selectmen of that town should decline the trust, such declination would not affect it ; the trust remains, and the court would supply trustees upon proper application in behalf of any member of the specified class of beneficiaries.    A charitable use will not be permitted to fall because the named trustee declines ; nor because of delay upon the part of beneficiaries in asking for their rights.    If the donor had provided that upon the cessation of use by the corporation the land or its representative value in money should be paid to his descendants, this latter provision would have offended the statute against perpetuities, for the reason that a century might elapse before such cessation ; being void, there would have remained to the Orphans' Home an absolute fee free from all limitations or incumbrances.    The gift of property first to one charitable use and then to another upon the determination of the first trustee no longer to use, as was done in this case, does not offend the statute of perpetuities.    The law favors charitable uses.    It does so with knowledge that in most cases they are intended to be practically perpetual ; and it is willing to permit what of evil results from the devotion of property to such length of use in consideration of the beneficent results flowing therefrom.    As one charitable use may be perpetual, the gift to two in succession can be of no longer duration nor of greater evil.    The property is taken out of commerce, but it instantly goes into perpetual servitude to charity.    The effect is practically the same as

if the gift had been to a specified charitable use during the pleasure of the trustees, then to another charitable use, both by the ministration of the same trustees or their successors. Moreover the Orphans' Home corporation has power at any time to make an absolute unincumbered title in fee simple to a purchaser at its pleasure by abandoning the specified use and paying the incumbrance to the trustees for the second charitable use. Practically therefore this particular piece of land is no more inalienable than is that which is subjected to a mortgage by an individual for private uses; no more removed from channels of commerce. In *Jocelyn* v. *Nott*, 44 Conn., 55, it is said that all devises or grants, whether for charitable uses or otherwise, must vest, if they vest at all, within the time limited by the statute of perpetuities. In that case there was a devise of land to trustees to hold until a society should be formed and erect a church. It was held that as there was no limitation as to time and no certainty that the event would ever occur, and the property was inalienable until then, the devise was void as tending to create a perpetuity. But in the case before us the property instantly vested, and a charitable use sprang into being at once. In each of the following cases, namely, *Brattle Square Church* v. *Grant*, 3 Gray, 142, *Wells* v. *Heath*, 10 id., 17, and *Society for promoting Theological Education* v. *Attorney General*, 135 Mass., 285, there was a devise to a charitable use with a proviso that in case of misapplication the gift should go to the kindred of the donor. Each proviso was held to be void as offending the statute against perpetuities. But in each case the gift over was for a commercial not a charitable use ; and the law will not in behalf of such forgive the offense against the statute. In *Odell* v. *Odell*, 10 Allen, 7, the court says :—" But a gift may be made in trust for a charity not existing at the date of the gift, and the beginning of whose existence is uncertain, or which is to take effect upon a contingency which may possibly not happen within a life or lives in being and twenty-one years thereafter." In *Ould* v. *Washington Hospital*, 35 U. S. R., 303, and in *Inglis* v. *Sailors' Snug Harbor*,

3 Peters, 142, there were devises to trustees to hold until charters should be given to corporations, then to convey title to them upon charitable uses. In the last case the court said :—" Here is clearly contemplated a future vesting, to depend upon a capacity to take to be created by a legislative act. If the passing of that legislative act had been restricted by the will in point of time to the lives of the individuals filling these offices at the death of the testator, on what possible ground could the devise be impeached? Does then the law invalidate the devise for want of such restriction or some equivalent to it? It is perfectly clear that the law of England does not and never did as relates to charities." And in each case the devise was upheld. See also *Coit* v. *Comstock*, 51 Conn., 352. In *Jones* v. *Habersham*, 107 U. S. R., 174, the testator devised property to several corporations upon charitable uses, providing that if any one of them should attempt to sell, alienate or otherwise dispose of the property contrary to the conditions imposed, the testator's legal representatives should enter, and in that event he devised " the said property so entered upon and repossessed unto the Savannah Female Orphan Asylum." The court says :—" There is nothing in this clause by which the heirs at law or next of kin can be benefited in any possible view. If the conditions against voluntary alienation and levy of execution are invalid, the previous devises stand good. If these conditions are valid the devise over to the Savannah Female Orphan Asylum, an undoubted charity, will take effect ; for as the estate is no more perpetual in two successive charities than in one charity, and as the rule against perpetuities does not apply to charities, it follows that if a gift is made to one charity in the first instance, and then over to another charity upon the happening of a contingency which may or may not take place within the limit of that rule, the limitation over to the second charity is good. *Christ's Hospital* v. *Grainger*, 16 Sim., 83 ; *S. C.*, 1 Macn. & Gord., 460 ; 1 Hall & Twells, 533 ; *Executors of McDonogh* v. *Murdoch*, 15 How., 367, 412, 415 ; *Russell* v. *Allen*, 107 U. S. R., 163." In *Russell* v.

*Allen, supra,* the court said :—" The objection to the valid-
ity of the gift before us as tending to create a perpetuity,
is fully met by the cases of *Inglis* v. *Sailors' Snug Harbor,*
*Executors of McDonogh* v. *Murdoch,* and *Ould* v. *Washing-
ton Hospital,* above cited, which clearly show that a gift in
trust for a charity not existing at the date of the gift, and
the beginning of whose existence is uncertain, or which is
to take effect upon a contingency that possibly may not
happen within a life or lives in being and twenty-one years
afterwards, is valid, provided there is no gift of the prop-
erty meanwhile to or for the benefit of any private corpora-
tion or person." In *Ould* v. *Washington Hospital,* 95 U. S.
R., 313, the court says:—" Charitable uses are favorites
with courts of equity. The construction of all instruments
where they are concerned is liberal in their behalf. *Mills*
v. *Farmer,* 19 Ves., 487 ; Perry on Trusts, sec. 709. Even
the stern rule against perpetuities is relaxed for their
benefit."

Dr. Franklin left legacies to the cities of Philadelphia and
Boston to be lent to young married artificers, with sureties,
to be repaid by yearly installments of one tenth with inter-
est, and directed that this should go on for one century, and
with a part of the fund for another century, at the expira-
tion of which he gave the principal to the city and common-
wealth. In 1827 Chief Justice GIBSON spoke approvingly
of this disposition of property. *Witman* v. *Lex,* 17 Serg. &
R., 91. In *Executors of McDonogh* v. *Murdoch,* 15 How.,
367, there was a bequest to the cities of New Orleans and
Baltimore in fee for education of the poor in those cities ;
in case of wilful violation of any condition imposed by the
testator the property to go to the states of Louisiana and
Maryland for the education of the poor in those states.
Held, in cases of failure of the devise to the cities, the lim-
itation over to the states would have been operative. In
*Christ's Hospital* v. *Grainger,* 1 Macn. & Gordon, 460,
there was a bequest to the corporation of Reading on cer-
tain trusts for the benefit of the poor of the town, with a
proviso that, if the corporation should for one whole year

neglect to observe the direction of the will, the gift should be utterly void, and the property be transferred to the corporation of London in trust for a hospital in the town of London. After the corporation of Reading had acted in disregard of the direction of the will to the knowledge of the corporation of London and the hospital, for more than twenty years, a suit was instituted on behalf of the hospital, claiming the property under the proviso. Held—first, that a contingent limitation over of property from one charity to another is not within the principle of the rule against perpetuities, and therefore that the limitation in question was no infringement of that rule. Secondly, that the limitation might well take effect notwithstanding the rule that a charitable purpose shall not be disappointed by the neglect of the trustee, the testator in the case having expressly made the gift over to depend upon the conduct of the trustee. The Lord Chancellor said:—" It was then argued that it was void as contrary to the rule against perpetuities. These rules are to prevent, in the cases to which they apply, property from being inalienable for certain periods. Is this effect produced and are these rules invaded by the transfer in a certain event of property from one charity to another? If the corporation of Reading might hold the property for certain charities in Reading, why may not the corporation of London hold it for the charity of Christ's Hospital in London? The property is neither more nor less alienable on that account." In 1 Jarman on Wills, 505, in a note to the American edition, it is said as follows:—" But a gift may be made in trust for a charity not existing at the date of the gift and the beginning of whose existence is uncertain, or which is to take effect upon a contingency which may possibly not happen within a life or lives in being and twenty-one years afterwards, provided there is no gift of the property meanwhile to or for the benefit of any individual or any private corporation. In the case of Downing College, a gift to trustees to buy ground, obtain a royal charter, and found a college, was established twenty years after the testator's death by Lord WORTHING-

TON and Lord CAMDEN, after taking the opinion of Lord Chief Justice WILMOT and Sir THOMAS SEWELL, M. R., followed up by decrees of Lord LOUGHBOROUGH thirty years later, after five unsuccessful applications to the crown for a charter ; and a charter was not in fact obtained until more than fifty years after the death of the testator ; after which further directions in the cause were made by Lord ELDON. *Attorney General* v. *Downing*, Wilmot, 1 ; *S. C.*, Dick., 414 ; Ambl., 550, 591 ; *Attorney General* v. *Boyer*, 3 Ves., 714 ; *S. C.*, 5 id., 300 ; 8 id., 256. So Lord THURLOW held that a legacy for the purpose of establishing a bishop in America was good, although none had yet been appointed. *Attorney General* v. *Bishop of Chester*, 1 Brown C. C., 44. In *Inglis* v. *Sailors' Snug Harbor*, 3 Pet., 99, a devise and bequest in trust out of the rents and profits to build a sailors' hospital as soon as the trustees could judge that the proceeds of the estate would support fifty or more sailors, (first obtaining an act of incorporation, if necessary,) and to use the income of the property forever for supporting the hospital and maintaining the sailors therein, was sustained by the Supreme Court of the United States ; and although there was some difference of opinion among the judges upon other points, none of them expressed any doubt of the validity of the disposition upon the ground of remoteness. And in *Sanderson* v. *White*, 18 Pick., 336, Chief Justice SHAW said :—' When a gift is made with a view to found a hospital or college not in being, and which requires a future act of incorporation, the gift is nevertheless valid, and the law will sustain it and carry it into effect. Upon this principle it has been held in England that if a gift is made to one charity in the first instance and then over to another charity upon the happening of a contingency which may not take place within the limit of the rule against perpetuities, the limitation over to the second charity is good, because no individual is concerned and no private use involved ; the estate is no more perpetual in two successive charities than in one charity ; and so the law against perpetuities and remoteness has no application and

there is nothing to restrain the donor from applying such limitations and contingencies in point of time to his charitable gift as he pleases. *Society for Propagation of the Gospel* v. *Attorney General*, 3 Russ., 142; *Christ's Hospital* v. *Grainger*, 16 Sim., 100; *S. C.*, Macn. & Gord., 464; 1 Hall & Twells, 539. A similar decision has been made by the Supreme Court of the United States under the civil law as established in Louisiana. *Executors of McDonogh* v. *Murdock*, 15 How., 367.' "

In Gray upon Perpetuities, sec. 592, it is said as follows :— " The question of remoteness may present itself in connection with charitable trusts in three shapes. A gift to a charity may be followed by a remote gift to an individual; a gift to an individual may be followed by a remote gift to a charity; and a gift to a charity may be followed by a remote gift to another charity. And in each of these cases there may or may not be a change of trustee. So that we have six typical forms :—(1.) To *A* on a charitable trust; on a remote contingency to *B* for his own use. (2.) To *A* on a charitable trust; on a remote contingency in trust for *B*. (3.) To *A* for his own use; on a remote contingency to *B* on a charitable trust. (4.) To *A* in trust for *B ;* on a remote contingency to a charitable trust. (5.) To *A* on a charitable trust; on a remote contingency to *B* on another charitable trust. (6.) To *A* on a charitable trust; on a remote contingency on another charitable trust."

" *Sec.* 597. The first four cases, therefore, form no exceptions to the rule against perpetuities. But in the last two cases, where the change is from one charity to another, it seems to be settled that there is an exception to the rule. Where there is no change of trustee it might indeed be urged, on the grounds stated above, that no question of remoteness arises, but the reasons of the decision given above seem to forbid this; and in *Christ's Hospital* v. *Grainger*, it was distinctly ruled that a direction in a will that on a contingency, which might be in the indefinite future, a legacy, giving to the town of Reading a charitable trust, should be transferred to the city of London on another charitable

trust, was good.   The law of this case has been spoken of with approval in *Odell* v. *Odell*, and *Jones* v. *Habersham*, and so are the text books generally.

"*Sec.* 598. Although this case of *Christ's Hospital* v. *Grainger* is the only decision in which the gift of a legal interest to be held on a charitable trust coming after a prior gift of the legal interest to another trustee on another charitable trust has been held valid, and although the case where there is no change of trustee might possibly be distinguished, yet the decision has stood so long unquestioned that it is likely to be followed."

In section 602 the author says :—" That if a remote gift to a charity after a gift to another charity is good, because they are by nature inalienable, then a gift to charity after a gift to an individual should be good ; the individual can alienate the whole of his present interest, and the remote interest is no more and no less inalienable than when limited after a gift to another charity.   Yet after a gift to an individual a gift to charity may be unquestionably bad for remoteness."

The gift over to the second charitable use is not void for uncertainty.   It is to aid "indigent young men of said town of Mansfield in fitting themselves for the evangelical ministry."   These supplied, and a surplus existing, that is to go "in aid of other indigent young men in this state" fitting for the same ministry.   Neither of the words "indigent" nor "evangelical" is of rare use or hidden meaning.   They are quite within ordinary intelligence, and point with a sufficient degree of certainty to the individual to enable the statute of charitable uses to distinguish him from all others. It is a sufficiently accurate statement, in this connection, to say that they describe a man who is without sufficient means of his own, and whom no person is bound and able to supply, to enable him to prepare himself for preaching the Gospel.   The trustees are the persons who for the time being hold office as selectmen of a town, an office of continuous duration.   To them the donor has given power, and upon them imposed the duty, of determining the persons

who meet the specified requirements and who are to become beneficiaries.    There are persons to determine and a rule for their guidance.    These constitute a valid foundation for a charitable use.

The Superior Court is advised that the State of Connecticut took the title to the land mentioned in the complaint subject to a prior incumbrance in favor of the persons who for the time being hold office as selectmen of the town of Mansfield, as trustees of Mr. Whitney's gift to a charitable use in aid of indigent young men of said town who are fitting themselves for the evangelical ministry ; said incumbrance being the value of the property deeded by said Whitney to the Orphans' Home corporation at the time when the last named corporation abandoned the charitable use for which it was given, independently of the value of the improvements by the corporation.

Also that, by an appropriate amendment to the complaint, the State of Connecticut can obtain a judicial determination as to the value of the property donated by Mr. Whitney to the Orphans' Home, computed as of the date of the abandonment, leaving out of view the improvements made thereon by the corporation; interest to be computed from the date of the abandonment.

In this opinion PARK, C. J. and LOOMIS, J., concurred.

CARPENTER, J., (dissenting).    I cannot assent to the conclusion at which a majority of the court have arrived. My reasons for dissenting however do not require me to controvert any legal propositions discussed in the majority opinion.    My starting point is different; I travel a different road, and I have come to a different result.

My first inquiry is—what estate was conveyed to the Connecticut Soldiers' Orphan Home by the deed of Mr. Whitney ?

The granting clause of the deed and the habendum are as follows :—" do by these presents give, grant, bargain, sell, and confirm unto the said corporation and to their succes-

sors two certain tracts or parcels of land" * * * . "To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto them the said grantees and their successors, to be by them used for the purpose intended and specified in said act of incorporation."

The office of the habendum is to state what estate or interest is granted by the deed; although this is sometimes done in the premises. Bouvier's Law Dict. *in verbum.* Judge SWIFT says:—" The deed must also ascertain the quantity of interest or kind of estate that is granted. This may be done in the premises, or where the parties are first described, but is usually reserved for the province of the words " to have and to hold." But if the kind of estate be determined in the premises, it may be qualified in the habendum, but not wholly contradictory or repugnant to the estate granted in the premises. For instance, if lands are granted to one and his heirs and assigns forever in the premises, to have and to hold to him for life, and then to another in fee, he shall take an estate in fee by the first expression, which cannot be altered by any subsequent words in the deed; for the first words create the estate, and the rule in construing deeds is that the first words shall operate. But where the grant is to one and his heirs, to have to him and the heirs of his body, this being in one connected sentence, would create an estate in fee tail. But the usual method is not to limit and define the estate till we come to the words " to have and to hold," and then it is done by limiting it to a certain person and his heirs forever, or to a certain person during life or for years, with remainder over according to the nature of the estate to be conveyed." 1 Revised Swift's Dig. top page 129.

In the light of these elementary principles what is a fair construction of this deed? If the granting clause had been to the corporation in fee simple, or to the corporation, its successors and assigns forever, it would have conveyed a fee ; and the qualifying words in the habendum would have been repugnant and consequently inoperative. The granting clause ·as it is, or with the word "successors " omitted, with

the usual habendum—" to have and to hold the above granted and bargained premises to the said corporation, its successors and assigns, to its and their own proper use and behoof forever," without restrictive words, would have conveyed a fee. If the habendum should be omitted it is questionable whether a simple grant to the corporation would carry a fee. Mr. Chamberlin, in his work on American Common Law, 699, says:—" In some of the states however this clause is omitted, in which case it is of course necessary to express in the granting clause the extent and duration of the estate." In 1 Rev. Swift's Dig., top page 81, it is said:—" In grants of lands to corporations the word ' heirs ' is not proper, for they have no heirs; and even the word ' successors ' is not necessary, for as a corporation never dies, a grant to it constitutes a perpetual estate equivalent to a fee simple." If this is to be taken literally, and as broadly as stated, essential requisites in deeds to individuals are dispensed with in deeds to corporations. I cannot believe that the author so intended. I think he assumed that the deed would contain the usual habendum clause, and that that, by the use of the word " forever," or in some other way, would determine whether the estate granted was a fee or a less estate.

The reason given for the proposition, that " a corporation never dies," is not now true in fact; for corporations, whatever they may have been in the days of Judge SWIFT, are now mortal. That is apparent from the record of this case; and we know as a matter of fact that they are constantly passing out of existence. In theory they may be regarded as perpetual; but a theory, so manifestly contrary to the facts, is a poor foundation for a rule of law.

It seems to me that words of inheritance or their equivalent are necessary in grants to corporations as well as to individuals. There should be no distinction. This case affords a good illustration. The grant is to a corporation and its successors. Had it been to a natural person by name it would have carried but a life estate. It being to a corporation the grant is for the life of the corporation. The

word "successors" in this case seems to have no particular meaning. The corporation has practically ceased to exist, and it has no successors in its charitable work. Its grantees are not successors but assigns, and assigns are not mentioned. The estate granted does not survive the grantee, as it has no successor to continue its beneficent work.

The operative words in the granting clause are apt and appropriate to describe any estate which may be determined by the habendum. Whether that indicates a fee, a life estate, an estate for years, or an estate otherwise qualified and limited, the granting words are equally applicable. There is hardly room for repugnancy or inconsistency even. The habendum not only limits the duration of the estate, but confines it strictly to a particular use. There are not only no words of inheritance, but the use to which the estate is limited is in some respects inconsistent with a fee. A fee imports absolute dominion, subject only to the right of eminent domain. The corporation had no such dominion, for it could use it only for one purpose, and it was inalienable except possibly to a successor.

The proviso that in case the corporation should abandon the use of the premises for the purpose specified it should pay their market value to the selectmen of Mansfield, does not and cannot operate to enlarge the estate granted. It may tend to show that the grantor intended to convey a fee and that he supposed he had done so. But his intention to convey a fee, in the absence of adequate and proper words for that purpose, is of no avail. This is not a will, in which great latitude of construction is allowed in order to give effect to the intention, but a deed, in which the question is not merely—what did the parties intend? but what have they done? Deeds must be construed as they are. If there are defects and omissions by which they fail to express the intention of the parties, the instruments must be reformed before courts can give effect to the intention. Not so with wills. Any mistakes or omissions in them cannot be rectified by the courts. So that the question before us is not—what did the grantor intend to do, or suppose that he had

done, but what did he actually do? His supposition that he had conveyed a fee did not make it so.

Nor is this an estate upon condition. It is not the conveyance of a fee defeasible on the grantor ceasing to use it for an orphan home, but it is simply the grant of a right to use the property for that purpose. The interest granted is unconditional. Of course there can be no forfeiture and no right of reversion.

My conclusion therefore is that the title to the property never passed from Mr. Whitney. He simply conveyed to the corporation a right to use the property, subject to which the title remained in him. That title descended to his heirs. When the specified use was abandoned the right so to use it was extinguished and the heirs had an unincumbered title. That title, by the conveyances from the widow and daughter, is now vested in the state. Thus I think the state has a good title.

In this opinion GRANGER, J., concurred.