STATE OF NEBRASKA, APPELLEE, v. LAWRENCE R. EBERHARDT, APPELLANT.

140 N. W. 2d 802

Filed March 11, 1966. No. 35995.

844

Joseph J. Cariotto, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

Defendant was convicted of second offense willful reckless driving, a misdemeanor. He was sentenced to 30 days in jail, fined $200 and costs, and his operator's license canceled for a period of 2 years.

At approximately 10:25 p.m. on an evening in March 1964, a trooper of the Nebraska Highway Patrol turned off a hard-surfaced highway and commenced pursuit of an automobile which had no taillights. The chase led through rough terrain to flat; was entirely on gravel roads except for 1 mile which was a dirt road; and led through areas on which there were houses and farm homes on both sides of the road. The trooper turned on his red lights shortly after the pursuit started, and they remained on throughout. Shortly after the commencement of the chase, the automobile was identified as a Chevrolet Corvette, white and red, with dealer's license plates, county No. 22, balance of the number unidentified. Only one person was in the Corvette. During the pursuit, the trooper traveled 85 to 90 miles per hour. At one point, the Corvette went into a ditch, up on the edge of a field for 100 yards, and then back out on to the road; and, during the chase, the Corvette proceeded past six stop signs without stopping at any of them.

Numerous square turns were made. The trooper never lost sight of the Corvette from a point near Cordova the

remainder of the distance to the city of York. During the chase, the trooper radioed to the York city police the description of the car, and that he would like to have a police car stand by. At some points during the chase, the trooper was as close as 45 to 50 feet behind the Corvette, but at the time the Corvette reached the city limits of York at the end of the chase, the trooper was approximately ¾ of a mile behind. The York police advised the trooper by radio that they had the car stopped. The trooper arrived a minute or two afterward, checked the Corvette from which the York police had removed the defendant, and found that the taillights were not burning, the engine was hot, and it had county No. 22 dealer's plates. From start to finish, the chase covered a distance of 30 miles, and that distance was traveled in approximately 25 minutes.

The defendant contends that the only evidence of speed is that of the patrol car; that the only specific evidence of defendant's violations is the failure to stop at the stop signs; and that the entire evidence is not sufficient to sustain a conviction for willful reckless driving. The foregoing résumé of the uncontradicted testimony answers the defendant's arguments quite effectively. There are clearly facts sufficient to establish a manner of driving which evidenced a disregard for the safety of persons and property sufficient to support the verdict of the jury.

This court, in a criminal action, will not interfere with a verdict of guilty based upon conflicting evidence unless it is so lacking in probative force that, as a matter of law, it is insufficient to support a finding of guilt beyond a reasonable doubt. Buckley v. State, 131 Neb. 752, 269 N. W. 892. Where the evidence is uncontradicted, as in this case, the application of the rule is even more obvious.

The defendant also asserts error in the district court's denial of defendant's motion for payment of costs and expenses of appeal by the county. The defendant filed a

poverty affidavit into which he incorporated a motion for allowance of certain appeal costs covered under section 29-2306, R. R. S. 1943, together with the costs of preparation of the bill of exceptions under section 24-342, R. R. S. 1943. At the hearing on the affidavit of poverty, the defendant introduced evidence of his financial circumstances. The court found that a reasonable inference could be drawn that the termination of defendant's employment approximately 1 week before was with a view to the affidavit of poverty, and that the defendant would be financially able to perfect and complete his appeal. The district court thereupon overruled the defendant's motion.

The defendant now contends that under the provisions of section 29-2306, R. R. S. 1943, the mere filing of a poverty affidavit by a defendant in a criminal case, regardless of its truth, is final and conclusive and automatically puts the provisions of section 29-2306, R. R. S. 1943, into effect. The defendant's position is that no other act or showing is necessary on his part; that the court has no right of discretion as to whether the affidavit should be allowed; that no hearing on the affidavit is either necessary or proper; and that the court has no authority to inquire into the actual truth of the affidavit.

While there have been no cases on the issues raised here as to section 29-2306, R. R. S. 1943, this court has determined on at least three occasions related questions arising under section 24-342, R. R. S. 1943. While that section deals with the bill of exceptions and uses the word "may," the principles of those cases are equally applicable here.

In Altis v. State, 109 Neb. 776, 192 N. W. 327, the court stated: "From the wording of the statute and the purpose for which it was enacted, it is plain that it was not intended to require the trial court or judge, in a mere ministerial way when objection has been made, to grant the order on the presentation of the affidavit without

question and without the authority to inquire into the truthfulness or good faith of defendant's affidavit. If, however, the proof is sufficient to support the application, then, of course, it is the duty of the court or judge to grant the order. The court or judge has the power, under the statute, when objection is made, to receive evidence for and against the application, and on such hearing, if it appears that the defendant's affidavit is untrue or that defendant has wilfully dissipated his property or conveyed or given it away for the very purpose of putting the state to expense of furnishing the bill of exceptions, it cannot justly be said that, because of defendant's poverty, he is unable to pay the reporter's fee."

In Rice v. State, 120 Neb. 641, 234 N. W. 566, this court held that while ordinarily the matter is in the discretion of the trial court, where the evidence is sufficient, an order will be required.

In Fisher v. State, 153 Neb. 226, 43 N. W. 2d 600, a poverty affidavit was filed and it was stipulated that the husband of the affiant was employed and earning $50 a week. No other evidence was introduced. The trial court denied the application on the ground that the defendant "has money." This court, citing the Altis case, *supra,* held that where there was no showing of any kind that the claim of poverty was untrue, nor that there had been any willful act to avoid payment, and the affidavit of poverty stood uncontradicted, the order should be granted.

We believe the better rule to be that when an affidavit of poverty is filed in a criminal case and stands uncontradicted, unobjected to, and no hearing on it is called for or had, the defendant is entitled to the benefits of section 29-2306, R. R. S. 1943. In a criminal case, where the court, on its own motion or on objection, holds a hearing and inquires into the truthfulness or good faith of a poverty affidavit, the determination of the defendant's inability to pay the costs is within the sound dis-

cretion of the trial court, and its decision thereon will not be disturbed on appeal unless it amounts to an abuse of discretion. In the case at bar, it cannot properly be said that the court abused its discretion.

For the reasons stated, the action of the district court was correct in all respects, and the judgment is affirmed.

AFFIRMED.