STATE OF NEBRASKA, APPELLEE, V. EDWIN LEE, APPELLANT.
174 N. W. 2d 344

Filed February 17, 1970. No. 37345.

Orville L. Coady of Baldwin & Coady, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

The defendant was charged in the district court for Thayer County with breaking and entering an automobile with intent to commit larceny and with breaking and entering a gasoline service station building on July 7, 1968, with intent to steal property of value, in separate counts of the same information. Defendant was found guilty by a jury on count two of the information on May 15, 1969. On May 29, 1969, defendant was sentenced to the Nebraska Penal and Correctional Complex for a period of 1 year at hard labor. The defendant has appealed, claiming that he was denied a speedy trial and that his motion for a discharge from custody made before and at the commencement of the trial should have been sustained. The foregoing presents the principal issue orally presented to this court.

The chronology of events from the date of defendant's arrest until the commencement of his trial in the district court is material to the issue raised. Defendant was arrested on July 7, 1968, and lodged in the Thayer County jail on July 8, 1968. On July 10, 1968, defendant appeared in county court and waived a preliminary hearing. His appearance bond was fixed at $1,500. On

July 26, 1968, an information charging the offenses was filed in the district court. On August 2, 1968, defendant appeared in district court and requested court-appointed counsel. The county attorney objected to an appointment of counsel and the matter was continued to August 13, 1968, to permit the county attorney to reduce his objections to writing. On August 13, 1968, it was shown that defendant's parents were able to provide counsel but they declined to do so. The trial court thereupon refused to appoint counsel for defendant at state expense but did reduce his appearance bond to $1,000. On August 28, 1968, defendant was arraigned and he entered a plea of not guilty. Some indication was given that the trial would be had at the next jury term following the Bonebrake case as soon as the court could get to it, but not sooner than 3 weeks. Defendant for the first time filed a written application for the appointment of counsel and an affidavit in support thereof on February 6, 1969, in which he stated he had been held in jail continuously since July 7, 1968. At the regular call of the docket on February 19, 1969, the matter of the appointment of counsel for defendant was continued to March 7, 1969, at which time defendant's written application for the appointment of counsel was overruled but no trial date fixed. On April 2, 1969, counsel was appointed for defendant who promptly filed a motion to dismiss because of a denial of defendant's right to a speedy trial. The motion was set for hearing on May 2, 1969, and the trial set to begin on May 15, 1969. The motion to dismiss was heard on May 6, 1969, and taken under advisement. Defendant's appearance bond was reduced to $500 and trial advanced to May 14, 1969. On May 13, 1969, the motion to dismiss was overruled. A motion to discharge defendant because of a denial of due process and the failure to appoint counsel prior to April 2, 1969, was filed the morning of the trial and it was overruled. Defendant again moved for a discharge for the failure of the State to afford due process and a

speedy trial at the close of the State's evidence. The motion was overruled, the case submitted to the jury, and a verdict of guilty returned. An appearance bond was furnished on May 16, 1969. After the conviction and sentence of the defendant, cash in the sum of $500 in lieu of an appearance bond pending appeal was furnished.

The defendant was confined in the county jail from July 8, 1968, to May 16, 1969, a total of 313 days from the date of his arrest until an appearance bond was furnished. From his arrest until his arraignment in the district court on August 28, 1968, a period of 52 days, the case proceeded expeditiously and in the usual course. It is the period from his arraignment until his trial, a matter of 259 days, that affords the basis of the claim that defendant was not afforded a speedy trial as required by the Constitution.

This case was tried within the statutory limitation of two terms of court provided by statute in cases where the defendant is held in jail pending a trial on the offense charged. § 29-1202, R. R. S. 1943. No contention is made otherwise. Whether or not the defendant is entitled to be discharged for want of a speedy trial is therefore dependent upon all the facts and circumstances of the case. The prosecution at no time asked for any delay or contributed to any delay other than for time to file written objections to defendant's application for the appointment of an attorney at the state's expense on the ground that he was indigent which was granted and disposed of within 2 weeks. There is no evidence in this record that defendant requested a more speedy trial although the defendant inquired of the court on August 28, 1968, when his case would come up for trial, to which inquiry the court replied that it could not be heard in less than 3 weeks but it would probably be in 4 or 5 weeks. The evidence is clear that the delay was not contributed to by either the prosecution or the defense.

On August 2, 1968, the defendant orally requested the

appointment of counsel on the basis of indigency. No written motion was made nor was an affidavit of indigency filed. The county attorney made no objection to the form of the request, but objected solely on the ground that defendant was not indigent. We deem the form of the request to have been waived when the county attorney directed his objections to the question of indigency only. On the taking of evidence on August 13, 1968, the court evidently determined that defendant was not indigent for the reason that his parents were able to provide counsel for defendant's defense. Defendant testified on August 2, 1968, that he talked with his father who told him in effect that he got himself into the mess and that it was up to him to get himself out of it. The court, in denying the request, evidently concluded that indigency meant that defendant not alone was indigent but that any person to whom he is entitled to look for support must also be indigent. See, State v. Eberhardt, 179 Neb. 843, 140 N. W. 2d 802; Storrs Agricultural School v. Whitney, 54 Conn. 342, 8 A. 141; Ex Parte Mays, 152 Tex. Cr. 172, 212 S. W. 2d 164.

On February 6, 1969, a written motion for the appointment of counsel at state expense was on file, accompanied by an affidavit of indigency. This was evidently done to comply with the conditions precedent to the appointment of counsel. There being no change of conditions, the motion was overruled on March 7, 1969. On April 2, 1969, the court in the interest of justice, as it stated, appointed counsel for the defendant. The matter of defendant's right to counsel involved the taking of evidence and a determination of the legal right thereto. Whether the court's conclusions were correct or erroneous, a matter which is unnecessary to decide, is not material here except as they contributed to the delaying of the trial. Certainly time consumed in their determination is excluded time in determining the limitations of a speedy trial.

We take note of the fact that the trial judge in the in-

stant case was a nonresident judge assigned by this court to hear the case because of the temporary disability of the local judge to hear the case. The record shows that from November 13, 1968, to April 14, 1969, nonresident district judges appeared and sat in the district court for Thayer County on 10 occasions. This is nothing more than an indication of the extent that the temporary disability of the local judge may have contributed to the delay of the trial in the instant case.

A defendant confined in jail pending his trial on criminal charges is entitled to be discharged solely because of lapse of time only when he is not tried before the end of the second term of court following the filing of the charge, pursuant to section 29-1202, R. R. S. 1943. The foregoing statute supplements the constitutional guaranty of a speedy trial and fixes the maximum limits of time for trial where a defendant has not contributed to the delay. Whether or not delay within the maximum limits of the statute requires a discharge of a defendant is dependent on whether or not the time was fair and reasonable in the particular case, a matter which is in the discretion of the court. Maher v. State, 144 Neb 463, 13 N. W. 2d 641. "* * * no general principle fixes the exact time within which a trial must be had to satisfy the requirement of a speedy trial. The right to a speedy trial is necessarily relative; * * *." 22A C. J. S., Criminal Law, § 467 (4), p. 24. In Critser v. State, 87 Neb. 727, 127 N. W. 1073, we said: "There is room for the exercise of sound discretion on the part of the trial court, always bearing in mind that the right to a speedy trial is the constitutional right of any citizen who is accused of crime." In Svehla v. State, 168 Neb. 553, 96 N. W. 2d 649, we said: "* * * But the legislature has not undertaken to fix any minimum time in such matters. What is a fair and reasonable time in each particular case is always in the discretion of the court. No hard and fast rule can be applied in all cases."

"In Shepherd v. United States, 163 F. 2d 974, it is said: 'The constitutional guarantee of a "speedy trial" is intended to prevent the oppression of a citizen by delaying criminal prosecution for an indefinite time and to prevent delays in administration of justice by requiring judicial tribunals to proceed with reasonable dispatch in trial of criminal prosecutions. * * * A "speedy trial", generally, is one conducted according to prevailing rules and proceedings of law, free from arbitrary, vexatious and oppressive delays. * * * The right of accused to discharge for failure to receive a speedy trial is a personal right which may be waived, and it ordinarily is waived if accused fails to assert his right by making a demand for trial, by resisting a continuance, by going to trial without objection that time limit has passed, or by failing to make some effort to secure a speedy trial.' * * * We fail to find in the record any protest or objection made on the part of the defendant until he filed his plea in abatement on September 19, 1958. This plea in abatement refers to a 'speedy trial.' We fail to find in the record any request by the defendant for an immediate trial." State v. Fromkin, 174 Neb. 849, 120 N. W. 2d 25. See, also, Annotation, 57 A. L. R. 2d, Speedy Trial—Loss of Right, § 10, p. 326.

"We do not approve a delay of two years in trying any defendant's case. * * * The combination of circumstances here * * * negate any wilful failure on the part of court officials to give defendant a speedy trial. Considering the reasons for the delay, the lack of prejudice to defendant from it, and his failure to demand a trial earlier, his Honor's ruling that defendant's right to a speedy trial had not been transgressed will not be disturbed." State v. Hollars, 266 N. C. 45, 145 S. E. 2d 309. See, also, State v. Bruns, 181 Neb. 67, 146 N. W. 2d 786; State v. Ellis, 184 Neb. 523, 169 N. W. 2d 267; State v. Gau, 182 Neb. 114, 153 N. W. 2d 298.

There is no evidence in this record that the delay was arbitrary or oppressive. There is no evidence that

either the prosecution or the defense contributed to the delay. There is no evidence that defendant demanded or requested a speedy trial or made any effort to obtain a speedier trial. There is no evidence of a willful failure by court or counsel to afford defendant a speedy trial. We find a want of prejudice to the defendant since the trial court made it clear that the time spent in jail awaiting trial was given full consideration at the time sentence was passed. Under the foregoing authorities and the discretion lodged with the trial court in such matters, we fail to find any abuse of discretion by the trial court and defendant's denial of a discharge because of delay is affirmed.

Defendant complains that the sentence of 1 year in the Nebraska Penal and Correctional Complex is excessive. The guilt of the defendant was established beyond question. No contention is made to the contrary. Before imposing sentence, the trial court held a hearing to explore the possibility of probation for the defendant. It was discovered that defendant had been in juvenile court on several occasions and that he had been fined in county court several times and that none of the fines had been paid. The sheriff testified that he held a warrant or detainer for the arrest of defendant for a breaking and entering charge in York County. The trial court announced that probation was not possible under such circumstances. The sentence was then imposed.

We point out that the sentence was the minimum for the offense of breaking and entering, and was imposed after giving full consideration of the time served in the county jail while awaiting trial. The sentence is not excessive.

AFFIRMED.

BOSLAUGH, J., concurring.

I concur in the decision in this case solely upon the ground of a lack of prejudice to the defendant. However, in view of the fact that the defendant has already been in jail for 311 days, the sentence of 1 year's im-

prisonment in the Nebraska Penal and Correctional Complex is excessive and I would reduce the sentence to 2 months' imprisonment in the county jail of Thayer County, Nebraska. See §§ 28-532 and 29-2308, R. R. S. 1943; Haney v. State, 119 Neb. 862, 228 N. W. 939.

McCOWN, SPENCER, and SMITH, JJ.

An indigent 18-year-old youth, never convicted of a felony, who had never served any time in jail before, was charged with breaking and entering. He was confined in the county jail for 311 days without trial. He was confined in jail 268 days before counsel was appointed for him. During that period of time his requests for appointment of counsel were resisted by the county attorney, and denied by the court on the ground that his parents were not indigent. He remained in jail for 259 days after arraignment before trial. These events took place in Thayer County, Nebraska, where the docket is not crowded and the State offers no excuse for the delay.

The statutory minimum sentence to the Penal and Correctional Complex for this offense was one year. The defendant was sentenced to one year in the Penal and Correctional Complex, which was in addition to the 311 days he had already spent in jail. There was, at that time, no statutory authority for the sentencing court or the Director of Corrections to credit the time already spent in jail on a sentence to the Penal and Correctional Complex. That situation has now been corrected insofar as the Director of Corrections is concerned. See L.B. 1307, § 37(1), 1969 Legislative Session, effective August 25, 1969. We find no authorization as yet for the sentencing court to give credit for jail time where a minimum sentence to the Penal and Correctional Complex is required and imposed.

In Klopfer v. North Carolina, 386 U. S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967), the Supreme Court said: "We hold here that the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amend-

ment. That right has its roots at the very foundation of our English law heritage." Admittedly, the dimensions of the right to a speedy trial must be largely determined by the facts and circumstances of each individual case. It should be pointed out also that the impact of the constitutional requirement is vitally affected where the defendant is in jail rather than free on bail.

The opinion supporting the conviction and sentence here relies heavily on section 29-1202, R. R. S. 1943, which fixes two terms of court as the maximum period after which the defendant is entitled to be discharged for want of a speedy trial. That section has remained completely unchanged at least since 1873. See G. S. 1873, p. 813. In 1873, however, terms of court were set by statute. Terms of court within the first Judicial District in 1873 varied from one year, as in Thayer County, to three a year in Otoe County. See G. S. 1873, p. 258. In 1873, a defendant arraigned on August 28, in Thayer County would not have been entitled to statutory discharge until June 1876, while in Otoe County, he would have been entitled to discharge in March 1874. Such inequity and lack of uniformity continue today.

In 1875, the new Constitution provided that times of holding court should be fixed by the judges of the district courts until otherwise provided by law. Constitution of 1875, Article XVI, § 26. The current statute requires judges of the district court in the last two months of each year to fix the time of holding terms of court during the ensuing year. § 24-303, R. R. S. 1943. There is no limitation as to the number or frequency of terms. Section 24-505, R. R. S. 1943, requires county courts to hold a regular term of court each calendar month for the trial of civil cases. We have held that this statute does not fix terms of court for criminal cases on the issue of a speedy trial. See State v. Bruns, 181 Neb. 67, 146 N. W. 2d 786.

We are advised that in 1968, the terms of the district court in Thayer County were February 21 and Sep-

tember 11; and in 1969, were February 19 and September 17. We are also advised that there are some district courts holding only one term of court per year. Information is not readily available as to courts holding more than two terms a year. In Thayer County itself, depending upon the date of the arrest and charge, the time for statutory discharge for lack of a speedy trial would vary from 12 to 19 months. In a one term a year district, it might vary from 2 to almost 3 years. When county court and district court terms may and do vary over the entire state, the utter lack of uniformity is apparent. This is surely no way to measure time limits dealing with the constitutional requirements of a speedy trial! The artificial distinctions based on terms of court constitute an anachronism urgently requiring legislative attention. ABA Standards Relating to Speedy Trial, § 2.1, provides: "A defendant's right to speedy trial should be expressed by rule or statute in terms of days or months running from a specified event. Certain periods of necessary delay should be excluded in computing the time for trial, and these should be specifically identified by rule or statute insofar as is practicable."

The terms of court approach to expressing the time limitations is still used in most states. This approach is obviously a residual appendage carried over from circuit riding days. See commentary to ABA Standards Relating to Speedy Trial, § 2.1. It should be noted also that ABA Standard 2.1, in referring to time limits uses the words "days or months." The commentary also points out that in the seven jurisdictions which in 1967 expressed the time in days or months rather than in terms of court, the times range from 75 days to 6 months. The President's Crime Commission has proposed that the period from arrest to trial of felony cases be not more than 4 months. The President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 155 (1967).

In any event, the time limits set in section 29-1202, R. R. S. 1943, are *maximum* time limits within which a defendant must be tried. This court has authority to determine whether the constitutional right to a speedy trial has been denied where the delay involved was less than the maximum fixed by statute. As we said in State v. Bruns, *supra:* "But the legislature has not undertaken to fix any minimum time in such matters. What is a fair and reasonable time in each particular case is always in the discretion of the court. No hard and fast rule can be applied in all cases."

We recognize that under present constitutional, statutory, and judicial standards, each individual case must be determined on its own facts. Not only the time involved in the delay, but the reasons for the delay, prejudice to the defendant, and a waiver of the constitutional right by the defendant may all be involved.

On the issue of reasons for the delay, the appropriate test is whether a purposeful or oppressive violation of Sixth Amendment rights occurred. Where the delay was by accident or oversight, and not purposeful and oppressive, courts should and have, in many instances, refused to find the delay constitutionally objectionable. See United States ex rel. Solomon v. Mancusi, 412 F. 2d 88 (1969). In the case before us, however, there can be little reasonable question but that the delay resulted not by mere accident or oversight, but from affirmative objections on the part of the county attorney to the appointment of counsel for an 18-year-old indigent defendant, and the trial court's refusal to appoint counsel from August 13, 1968, until April 2, 1969. The defendant first requested counsel on August 2, 1968, less than 30 days after his arrest and confinement. That request was denied. The defendant even filed a written application for appointment of counsel and an affidavit in support thereof on February 6, 1969, in which he specifically stated that he had been held in jail continuously since July 7, 1968. At the regular call of the docket on Feb-

ruary 19, 1969, that matter was continued to March 7, 1969, at which time the application for appointment of counsel was again overruled. Counsel was finally appointed on April 2, 1969, 8 months to the day after the defendant's first request for counsel.

Counsel promptly filed a motion to dismiss for denial of due process and a speedy trial. That motion was heard one month later and denied, and the trial was held 43 days after counsel was finally appointed. Under such circumstances, the record is powerfully persuasive that the delay here cannot be classified as accidental or an oversight, but was, instead, purposeful and oppressive.

The opinion supporting the conviction and sentence here also finds no evidence that there was any prejudice to the defendant. The possibility of prejudice from the delay is an important factor in close cases, but the very assumption of the Sixth Amendment is that unreasonable delays are, by their nature, prejudicial. It is not generally necessary for the defendant to demonstrate affirmatively how he has been prejudiced by an unreasonable delay. Hedgepeth v. United States, 364 F. 2d 684 (1966).

We think it clear that the prejudice referred to in most speedy trial cases refers to prejudice at trial, but there are other types of prejudice as well. In United States v. Ewell, 383 U. S. 116, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966), the court said: "This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation, and to limit possibilities that long delay will impair the ability of an accused to defend himself." It can hardly be doubted that the defendant here was subjected to "undue and oppressive incarceration." If the defendant had been found not guilty, there could have been no prejudice "at trial." Yet we think no one would disagree that in that event the undue and oppressive incarceration would have been "prejudicial."

The opinion supporting affirmance of the conviction and sentence here concludes that the undue incarceration did not result in any prejudice to the defendant because "the trial court made it clear that the time spent in jail awaiting trial was given full consideration at the time sentence was passed." The problem here, however, is that if a sentence to the Penal and Correctional Complex was to be given, a minimum sentence of one year was required, and the trial court had no statutory authorization for reducing a required minimum sentence to the Penal and Correctional Complex by the amount of time the prisoner had been confined in jail pending trial. See, Volker v. McDonald, 120 Neb. 508, 233 N. W. 890, 72 A. L. R. 1267; Opinions of the Attorney General 1955-56, p. 127.

Here an 18-year-old defendant, never before in jail and never previously convicted of a felony, received the minimum one-year sentence required by law if he was to be sentenced to the Penal and Correctional Complex. The court had no statutory authorization to credit jail time on that minimum penitentiary sentence. Under such circumstances, the fact that the trial court fully considered the jail time in passing sentence ought not to be construed as proof that the sentence would otherwise have been two years or longer. The fact that the court stated that he could not consider the defendant for probation is inconclusive. It is noteworthy that although the defendant received the minimum penitentiary sentence, his sentence might have been a fine, or imprisonment in the county jail for not exceeding six months. See § 28-532, R. R. S. 1943. The facts here emphatically do not remove a reasonable possibility of prejudice, much less affirmatively establish a complete lack of prejudice. If the defendant were to serve the one-year sentence here with full credit for good time while serving it, he would be released in less than the time he spent in jail before trial. Even assuming that the Director of Corrections exercises his new statutory

authority to credit jail time, the mere processing procedure will mean additional incarceration. We think the record before us vividly demonstrates not only the reasonable possibility of prejudice, but the probability of prejudice.

With respect to waiver, the opinion for affirming the conviction and sentence discusses cases in which this court and others have held that the right to speedy trial is waived if an accused failed to make some effort to secure a speedy trial. That opinion states: "There is no evidence that defendant demanded or requested a speedy trial or made any effort to obtain a speedier trial." We think it only necessary to point out that an indigent defendant who has been denied counsel for 8 months and who inquired at the time of arraignment as to when his trial might be, can hardly be said to have waived his constitutional right to a speedy trial. It is the prosecution and not the defense that is charged with bringing a case to trial. See Hedgepeth v. United States, *supra*.

Under the circumstances of this case, the defendant was denied his constitutional right to a speedy trial, and that denial was purposeful, oppressive, and prejudicial. The judgment should be reversed and the defendant discharged.

Three judges of this court have concurred in affirming the conviction and sentence. One judge has concurred in the conviction and the decision to affirm it, but has found the sentence excessive, and that it should be reduced to 2 months imprisonment in the county jail. Under the facts and circumstances here, and without retreating in any respect from the views expressed in this opinion, we also find the sentence excessive. See §§ 28-532 and 29-2308, R. R. S. 1943. We therefore join in reducing the sentence here to 2 months imprisonment in the county jail in Thayer County, Nebraska.

PER CURIAM.

Four Judges of this court concur in sustaining the jury verdict and the finding of guilty in this case. Four

Judges of this court concur in finding that the sentence is excessive.

The judgment of the district court is affirmed and the sentence is modified. The sentence is reduced to a period of 2 months in the county jail.

AFFIRMED AS MODIFIED.

NEWTON, J., concurring in finding of guilt and dissenting from reduction of sentence.

I concur with the opinion of Carter, J., that, under the circumstances attendant upon this case, the failure to try defendant more promptly was not prejudicial and is not indicative of an abuse of discretion nor was the sentence excessive.

The opinion of McCown, Spencer, and Smith, JJ., holds forth at considerable length on a critique of present Nebraska law. It complains that our law does not specifically provide that the sentencing court may give credit for time spent in jail where a minimum sentence is required. The criticism is not pertinent and is completely unwarranted. Defendant received a sentence of 1 year in the Nebraska Penal and Correctional Complex on a charge of breaking and entering. The statute, section 28-532, R. R. S. 1943, provides that in such cases the defendant may be either fined or imprisoned in the county jail for not to exceed 6 months, in lieu of being sentenced to the Nebraska Penal and Correctional Complex. This certainly allows sufficient latitude to give credit for "jailtime."

Further complaint is made regarding section 29-1202, R. R. S. 1943, which fixes 2 terms of court as the maximum period over which a defendant may be held prior to trial. Again, the criticism is not pertinent. It is conceded in the opinion that this court is free to determine *minimum* time limits on a factual case-by-case basis. These criticisms are patent efforts to solicit legislative action. They constitute a direct and calculated invasion of the legislative field and, as such, a willful violation of the tripartite division of governmental powers pro-

vided in the Constitution of Nebraska. This court may well exercise restraint upon the executive and legislative branches of government, but the only practical restraint upon the judiciary is that imposed by a sense of propriety and good conscience and a faithful adherence to constitutional principles. Abuse of judicial powers can only promote a lack of confidence in the courts and the eventual destruction of our constitutional system of government.

The proponents of the opinion are in an anomalous and contradictory position. After adopting the position that the defendant should be *discharged* on the theory that his right to a speedy trial was unlawfully denied, they join in the opinion of Boslaugh, J., requiring the imposition of a 2-month jail sentence. One position or the other is necessarily incorrect.

To sustain their position, the proponents of the opinion cite United States v. Ewell, 383 U. S. 116, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966), wherein the court said: "This guarantee (of speedy trial) is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation, and to limit possibilities that long delay will impair the ability of an accused to defend himself." None of these considerations are here applicable. Undue incarceration before trial and concern over public accusation would be very material to an innocent person wrongfully accused, but scarcely so to one who is guilty when the court takes the period of incarceration into consideration in fixing sentence. There is not the slighest hint or contention that defendant's ability to defend himself was impaired. Indeed, he offered no evidence whatever in his own behalf.

The contention that the sentence was excessive is likewise without merit. It has long been the rule of this court that the punishment of a statutory offense is left to the discretion of the trial court, to be exercised within prescribed limits, and a sentence imposed within such

limits will not be disturbed unless there appears to be an abuse of discretion. See Thompson v. State, 159 Neb. 685, 68 N. W. 2d 267. The sentence imposed was well within the limits prescribed by statute. The four members of this court who have insisted upon modifying the sentence imposed of 1 year in the Penal and Correctional Complex do not even contend that there has been an abuse of discretion. They simply say, in effect, we would have imposed a lighter sentence and since we have the power to do so, we herewith modify the sentence with or without legal justification.

At the time of imposing sentence, the trial court was well aware that he had four alternatives: Probation, a fine, a jail sentence, or a sentence to the Penal and Correctional Complex. It was dealing with a young man who had not before been convicted of a felony, but who was not exactly a first offender. Defendant owed a number of fines imposed for various misdemeanors. Still more serious, he was wanted in two other counties on breaking and entering charges. Under such circumstances, can it reasonably be contended that he should have been placed on probation or punishment limited to a fine or a short sentence to the county jail? Instead, the court sentenced him to the minimum of 1 year in the Nebraska Penal and Correctional Complex and in so doing, stated: "It now becomes my function and duty to impose sentence upon you. In imposing sentence I've given full consideration to the record, to the offense charged against you, your age, your background, your prior criminal record, which, I know, shows no prior felony convictions; I've given consideration, full consideration, to the record showing the date of your arrest, your incarceration and the time of your incarceration in the County Jail of this county, up until the time of your release on bail on May 16th of this year; I've given full consideration to the amount of bail that has been set for you, whether or not it might be con-

sidered excessive, or, whatever it might be; I've given consideration to all these things."

It is apparent that the court felt this young man merited a heavier sentence but reduced it to 1 year to allow for the time spent in jail prior to trial. This was the only manner in which the court could give credit for "jailtime" and the court having availed itself of the opportunity there was no prejudice sustained by reason of defendant's stay in jail prior to trial and no abuse of discretion. For this court to now reduce the sentence further amounts to giving "double time" or a double allowance for the time in jail. It amounts to a subversion of the law without regard to the record before the court and to an encroachment upon the powers and prerogatives of the Board of Pardons and Paroles. I reiterate that the reduction of this sentence is an unjustified assertion of naked judicial power and a violation of the legal principles applicable in such situations.

WHITE, C. J., and CARTER, J., join with NEWTON, J., in the above.